■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEX S. GORDON and JAMES E. MILAN, Appellants. — Appeals (1) by defendant Gordon from a judgment of the County Court, Nassau County (Lawrence, J.), rendered January 19, 1981, upon resentence, convicting him of robbery in the first degree, upon a jury verdict, and imposing sentence, and (2) by defendant Milan from a judgment of the same court (Kalinowski, J.), rendered July 25, 1980, convicting him of robbery in the first degree, upon his plea of guilty, and imposing sentence. The appeals bring up for review the denial, after a hearing (Kalinowski, J.), of a motion to suppress evidence of inculpatory statements by, and an out-of-court identification of, defendants. Judgments reversed, on the law and the facts, plea of defendant Milan vacated, motion to suppress statements and out-of-court identification granted, and the case is remitted to the County Court, Nassau County, for further proceedings consistent herewith. On August 6, 1979, at approximately 5:30 P.M., seven men entered the complainant's photography shop. One of the men produced a sawed-off shotgun and ordered the complainant to kneel on the floor behind the counter. In this position, the complainant watched as the intruders removed merchandise from the shop. He had two of the men, later identified as defendants Gordon and Milan, in total view for a minute and a half and 30 seconds, respectively. During this time, the shop was well lit by fluorescent lighting. After the intruders had exited the photography shop, the complainant gave chase. He followed a "get-away" car until it jumped a curb, knocked down a "one-way" sign and came to rest on the front lawn of a nursing home. A Nassau County policeman soon arrived at the scene. He spoke to the complainant, who informed the officer that he had been robbed, that two of the perpetrators had just run behind the nursing home, and that they were young, black males, approximately 5 feet, 10 inches in height. The officer then began to cruise the vicinity in his squad car. (It should be noted that he was familiar with the area since he had lived there as a child, and he visited his parents, who live there, about three times a week.) After cruising for approximately five minutes, the officer heard the following radio run: "Robbery at Film Shack, complainant

chasing perpetrators in own car, handguns and shotguns, escaped in two cars." Almost immediately thereafter, the officer saw two young black men, whom he did not know to be residents of the neighborhood and who met the brief description given by the complainant. They emerged from a driveway between two homes, turned down the street and walked towards him. The officer stopped his vehicle, and motioned the two men to approach, which they did. They then placed their hands on the hood of the squad car and were told not to move as the police officer radioed for assistance. He frisked them and found no weapons. When assistance arrived, the officer, without questioning the two, handcuffed them, placed them in the squad car and transported them back to the photography shop. There, the complainant identified the two men, defendants Gordon and Milan, as among the seven who had perpetrated the robbery. The defendants were taken to the police precinct for questioning by detectives. Both then received *Miranda* warnings for the first time. Defendant Gordon gave a written statement admitting his participation in the robbery, and Milan, once advised of Gordon's statement, orally admitted his own participation. Evidence of these two statements and of the complainant's showup identification of the defendants at the scene of the robbery were sought to be suppressed. After a hearing, the County Court denied suppression. We reverse. The issue is whether defendants, when first approached by the police officer and transported back to the robbery scene in handcuffs, were arrested upon probable cause, and, if not, whether the showup identification and inculpatory statements were rendered constitutionally infirm as being the direct result of an illegal arrest. (See *Wong Sun v United States,* 371 US 471.) Initially, we observe that, although no statement to that effect was made, defendants were under arrest "when handcuffed and placed in the police vehicle for transportation back to the robbery scene". (*People v Brnja,* 50 NY2d 366, 372.) Whether, pursuant to CPL 140.10, there was probable cause for an arrest at that point, will depend on whether it then appeared more probable than not that a crime had taken place and that the defendants were its perpetrators, "for conduct equally compatible with guilt or innocence will not suffice". (*People v Carrasquillo,* 54 NY2d 248, 254.) In the case at bar, the arresting officer had probable cause to believe that a crime had been committed, but not that defendants had been the perpetrators. When the officer first viewed the defendants merely walking down a driveway and then down the street, their behavior far from suggested any criminal activity. Upon stopping and frisking them, he found no weapons on the defendants, and, not questioning them, he developed no further information about them. The only possible bases for arrest were that defendants met the very vague and general description given by the complainant of two young, black males, approximately 5 feet, 10 inches in height and that they were unfamiliar faces in a neighborhood with which the officer was familiar. Without more, these failed to satisfy the criteria for probable cause established by *People v Brnja* (50 NY2d 366, *supra*). Consequently, when the defendants were handcuffed and placed in the squad car, they were illegally arrested. (See *People v Henley,* 53 NY2d 403, 407.) Since the showup, in which the complainant identified the defendants as perpetrators of the instant offense, followed upon the illegal arrest almost immediately and was the direct result thereof, evidence of this out-of-court identification should be suppressed and not admitted at trial. (See *Wong Sun v United States,* 371 US 471, *supra*.) Nevertheless, the record indicates that an in-court identification of defendants by the complainant would be supported by an independent source not related to the illegal arrest, viz., the complainant's own observations of defendants during the commission of the crime. Such an in-court identification, if offered, would be admissible. (See *United States v Crews,* 445 US 463.) As to defendants' inculpatory statements, we are convinced that they too were the direct

result of their illegal arrests and are thus excludable as the fruits of official illegality. (See *Wong Sun v United States, supra,* p 485.) The exclusionary rule is equally applicable to both statements. Clearly, there was no intervening event between defendant Gordon's illegal arrest and inculpatory statement to purge the primary taint of the unlawful invasion. (See *Wong Sun v United States, supra,* p 486.) With regard to defendant Milan's statement, it is suggested that Gordon's statement served as an independent basis and intervening event that sufficiently attenuated the taint created by the illegal arrest. (See *Brown v Illinois,* 422 US 590, 600-605.) We reject this suggestion, which, in effect, would authorize a deprivation of Fourth Amendment protections (US Const, 4th Amdt) as to one, and only one, of two illegally arrested defendants solely because of the fortuitous circumstances that, in the sequence of events, his confession was made subsequent to, and after he was informed of, the confession of his codefendant. Such a result should not be allowed where, as here, the arrests were simultaneous, the confessions were in close proximity to the time of arrest, each confession was contemporaneous with the other, and each defendant had standing to challenge the illegality of official conduct, i.e., his invalid arrest. (Cf. *People v Henley,* 53 NY2d 403, 407-408, *supra.*) Accordingly, we hold that under the facts of this case, where defendants were arrested together and those arrests were illegal, and where their confessions were obtained contemporaneously and during simultaneous custodial interrogations that were the direct result of their illegal arrests, the confession of each will be inadmissible against him at trial as having been obtained in violation of his Fourth Amendment rights. (See US Const, 4th Amdt.) The fact that one confession followed upon, and was given after notice of the other, will not, as to the subsequent confession, purge the primary taint created by the illegal arrest. We have considered the other issues raised by defendants and find them to be without merit. Damiani, J. P., Lazer, Mangano and Gibbons, JJ., concur.