■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY B. BUTLER, Also Known as PHILIP JOHNSON, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Naro, J.), rendered September 10, 1979, convicting him of robbery in the third degree, upon a plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress identification testimony and physical evidence seized by the police. Judgment reversed, on the law, plea vacated, motion to suppress granted as to an out-of-court identification and otherwise denied, and the case is remitted to the Supreme Court, Queens County, for further proceedings. Seated in a police patrol car in Queens at about 5:45 A.M., Captain Paul Short heard a woman shouting, "[T]hey're over there; they're the ones; Jack in the Box". Short told the driver of the patrol car to turn around and as the car turned, Short saw three people standing on the corner looking in the direction of the patrol car. These people, later identified as the appellant Anthony Butler and his codefendants, William Mansfield and Pepsi Green, then made a sudden move toward the stairway of an elevated subway platform. Short got out of the car, followed the defendants up the flight of stairs, and when he got to the top, saw the defendants approaching the subway turnstiles. Short then blocked their path to the train platform. Although codefendant Mansfield argued that they wanted to catch the train and did not wish to be detained, Short detained them until the train passed and asked them to accompany him downstairs. At that point, Short noted that Mansfield was carrying a clear plastic bag containing meat and hamburger

rolls. Short asked Mansfield where the bag came from and Mansfield replied that his mother had gone out of the grocery store business and that he was bringing home the remaining food. Short then directed the defendants down the stairs to the street where he was informed by "Central that there had been a stickup". A few minutes later a radio car pulled up and an officer told Short about a robbery which occurred at a nearby Jack-in-the-Box and that the persons detained by Short matched the description of the perpetrators. Upon searching the defendants, the officers found a gun in codefendant Green's purse. Subsequently, the night manager of the Jack-in-the-Box arrived in a patrol car and identified the defendants as the perpetrators of the robbery. Later that day, the manager participated in a showup at the police station where he again identified all the defendants. The appellant then moved to suppress the pretrial and in-court identifications as well as the evidence seized from his codefendants. Cross-examined during the suppression hearing, Captain Short conceded that when he detained the defendants and told them to accompany them downstairs, he was not aware that a crime had been committed and he did not have any reasonable ground to believe that a crime had been committed. When asked if the defendants were then in custody, Short replied: "I would say yes, they were in custody. I wasn't going to let them go". The woman who had earlier shouted at the police was not found. The court granted suppression as to the showup at the police station, but otherwise denied the motion. Appellant subsequently pleaded guilty to robbery in the third degree. Suppression of the items seized from the codefendants was properly denied since appellant lacked the standing to challenge those seizures and did not demonstrate that he had a legitimate expectation of privacy in the area searched (see *United States v Salvucci,* 448 US 83; *Rawlings v Kentucky,* 448 US 98; *Rakas v Illinois,* 439 US 128; *People v Ponder,* 54 NY2d 160; *People v Henley,* 53 NY2d 403). The court erred, however, in denying that part of the motion which was to suppress the first showup. Captain Short's concessions that the defendants were in custody at the inception of the encounter but that he had no reasonable ground to believe that a crime had been committed, leave us no alternative but to conclude that the police action was unjustified (see *People v De Bour,* 40 NY2d 210; *People v Cantor,* 36 NY2d 106; *People v Finlayson,* 76 AD2d 670). The sudden movement by defendants, without additional articulated reasons associating defendants with criminality, is an insufficient basis for the detention (see *People v Howard,* 50 NY2d 583, cert den 449 US 1023; 1 La Fave, Search and Seizure, § 3.6, subd [d]; Ann., 45 ALR3d 581). Since the showup followed almost immediately after the illegal arrest and was the direct result of the arrest, evidence of this out-of-court identification must be suppressed as the fruit of the unlawful detention (see *Wong Sun v United States,* 371 US 471; *People v Gordon,* 87 AD2d 636; *People v Cyrus,* 76 AD2d 842). Nevertheless, an in-court identification by a victim who had sufficient opportunity to observe the perpetrator at the time of the crime is admissible even though there has been an out-of-court identification following an unlawful arrest (*United States v Crews,* 445 US 463; *People v Pleasant,* 54 NY2d 972; *People v Gordon, supra; People v Pittman,* 83 AD2d 870; *People v Cyrus, supra*). Here, since the record indicates that an in-court identification would proceed from an independent recollection, untainted by the unlawful seizure, such identification should not be suppressed. Lazer, Mangano and Gibbons, JJ., concur; Titone, J. P., dissents and votes to affirm the judgment.