OPINION OF THE COURT
Meyer, J.
 Proof in a kidnapping prosecution that defendant threatened the use of a gun is sufficient to establish abduction by the threatened use of deadly physical force, even though there is no evidence that in fact he possessed an operable firearm. There must, nevertheless, be a reversal *412 and a new trial. The lineup identification that followed immediately after defendant’s arrest should have been suppressed, the prosecution having failed to offer evidence at the pretrial suppression hearing concerning the content of the teletype communication on the basis of which the arrest was made and, therefore, having failed to establish probable cause for arrest.
I
Shortly after midnight on February 20, 1981, Theresa Culp finished her shift as a nurse at the Albany Medical Center. As she approached her car in the parking lot, she heard the footsteps of a person running behind her. A man, identified at trial as defendant, caught up to her and then fell down by her car. Seeking to be helpful, Mrs. Culp talked to the man for about two minutes. As she turned to enter her car, however, the man grabbed her from behind and pushed her across the parking lot toward another car the passenger door of which was open.
The assailant held his right hand over Mrs. Culp’s mouth and used his body to push her, while repeatedly warning, “Don’t scream lady, I’ve got a gun in my pocket.” After moving about 40 feet in this fashion, the man placed his left hand on Mrs. Culp’s head to prevent her from struggling, and that caused the fingers of his right hand to slip into her mouth. She then bit down on one of his fingers hard enough to loosen several of her teeth, causing the attacker to release his grip. When Mrs. Culp then began screaming, the man fled in the car.
Defendant was arrested the following day and was identified by Mrs. Culp in a lineup. He was charged in a one-count indictment with kidnapping in the second degree in that he abducted Mrs. Culp by restraining her and dragging her to his car and while doing so threatening her that he was armed with a gun.
Defendant moved to suppress Mrs. Culp’s identification as the fruit of an arrest made without probable cause. At the suppression hearing, the arresting officer testified that he stopped defendant’s car at about 5:00 a.m. on the day after the incident because the car matched a teletype description the officer had received. That teletype did not *413 contain any information about the crime to which it related. Although the officer testified that the teletype included a “general physical description of the subject,” neither he nor anyone else testified what that description was, nor was any evidence presented of the description Mrs. Culp had offered when reporting the crime or of the extent to which defendant’s appearance matched Mrs. Culp’s report or the teletype description. The only further evidence offered was Mrs. Culp’s testimony that when she was called to the police station for the lineup, another officer told her that a suspect had been picked up “that matched the description of the person that I had said assaulted me.”
After being stopped, defendant’s car was impounded and he was taken to a police station, where Mrs. Culp identified him in a lineup. Mrs. Culp’s testimony at the suppression hearing related solely to the circumstances of that identification proceeding, which is challenged before us not for suggestiveness or unfairness, but as the product of an arrest without probable cause.
The hearing Judge ruled that suppression of the lineup identification was not required because the police had probable cause for the arrest, a conclusion he supported by finding that the arresting officer “testified that the defendant matched the description of the suspect in the assault.” In fact, the only hearing testimony of the officer concerning his observation of the occupant of the car was that there was a laceration of his right index finger.
Just prior to the commencement of trial, the court ruled, in response to defendant’s motion pursuant to People v Sandoval (34 NY2d 371), that his credibility could be impeached with proof of his prior conviction for sexual abuse and proof of the facts underlying his adjudication as a youthful offender on an assault charge. Thereafter, defendant, who did not testify at trial, was found guilty of kidnapping in the second degree. The primary evidence against him at the trial was Mrs. Culp’s testimony identifying him as her assailant, which was bolstered by her testimony that she had selected him in a lineup on the day after the crime.
*414 On defendant’s appeal to the Appellate Division, the entire court agreed that the evidence was sufficient to establish kidnapping in the second degree by abduction. On the other issues the court was split. The majority, one Justice dissenting, upheld the Trial Judge’s suppression ruling on the alternative theories that defendant consented to accompany the officers to the police station, but that, even if he had not, there was probable cause for his arrest, and rejected defendant’s argument that the Trial Judge’s Sandoval ruling was erroneous.
II
To establish either kidnapping in the first degree (Penal Law, § 135.25) or kidnapping in the second degree (Penal Law, § 135.20), it must be established that the person accused abducted another person. “Abduct” is defined by subdivision 2 of section 135.00 of the Penal Law as “to restrain a person with intent to prevent his liberation by * * * using or threatening to use deadly physical force”, and under subdivision 11 of section 10.00 of the Penal Law “deadly physical force” means “physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.”
The theory of the prosecution in the present case is that when defendant stated to the victim that he had a gun in his pocket he thereby threatened the use of deadly physical force. Defendant argues, however, that the proof was insufficient because it must be shown that the threat made was capable of present realization and there was no evidence at trial that he actually possessed a gun, much less an operable gun.
The plain language of the statute requires rejection of defendant’s argument. Depending on how it is used, even a normally innocuous item may constitute “deadly physical force” or may be a “dangerous instrument”* (see People v Carter, 53 NY2d 113 [rubber boots]; People v Cwikla, 46 NY2d 434, 442 [handkerchief used as a gag]). In contrast, the threat presented by a gun does not depend to any *415 significant extent on the manner in which it is used. So long as a gun is operable, it constitutes deadly physical force, and a threat to use a gun, such as was made here, can only be understood as a threat that the weapon is operable. In short, on the facts of this case, the evidence was sufficient to establish that defendant restrained Mrs. Culp by “threatening to use deadly physical force.”
Ill
Defendant’s pretrial motion to suppress Mrs. Culp’s lineup identification as the fruit of an unlawful arrest cast the burden on the prosecution to come forward with evidence establishing probable cause for the arrest (People v Berrios, 28 NY2d 361, 367) People v Malinsky, 15 NY2d 86, 91, n 2). The analysis required of a hearing Judge faced with deciding whether the People have met their burden is largely the same as that used by a magistrate in passing on an application for an arrest or search warrant (People v Bouton, 50 NY2d 130,135; People v Boniface, 37 AD2d 728, 729). In either instance, a prime requirement of the Fourth Amendment and the New York Constitution (art I, § 12) is specificity: a particular description of “the place to be searched, and the person or things to be seized” (see United States v Cortez, 449 US 411, 418; Ybarra v Illinois, 444 US 85; People v Nieves, 36 NY2d 396, 400-402).
Thus, an arrest warrant must contain “the name of the defendant to be arrested or, if such be unknown, any name or description by which he can be identified with reasonable certainty” (CPL 120.10, subd 2; see Boose v City of Rochester, 71 AD2d 59, 66), and a search warrant must provide a description “essential to identification with certainty” (CPL 690.45, subd 5). Where an arrest or search is made without a warrant, the reviewing court must be supplied with the description upon which the police acted and sufficient evidence to make its own independent determination of whether the person arrested or the item seized reasonably fit that description (People v Brodie, 87 AD2d 653). In other words, “the court must be presented with facts, not assurances”, and “[sjummary statements that the police had arrived at a conclusion that sufficient cause existed will not do” (People v Bouton, 50 NY2d 130, 135, supra).
*416 It follows that when the police have acted on the basis of a teletype or radio bulletin the prosecution’s burden is not discharged absent proof regarding the contents of the communication received. The reliability of the information conveyed may be assumed by the officer in the field (People v Lypka, 36 NY2d 210, 213-214) and by the suppression court as well so long as defendant raises no specific challenge (People v Jenkins, 47 NY2d 722). But the information conveyed must be proved; there is no presumption of its sufficiency to establish probable cause for an arrest or search. When a proper suppression motion is filed (see CPL 710.60), therefore, the content of the bulletin upon which the police acted, as opposed to its basis or source, must be proved at the hearing.
Here, the prosecutor offered no evidence of the physical description contained in the teletype, or of defendant’s appearance at the time of arrest, on the basis of which the hearing Judge could reach a conclusion that there was probable cause. Nor was this failure of proof cured by the victim’s testimony that a police officer who was not involved in the arrest had asserted that defendant fit the description she had given. It is the responsibility of the suppression Judge, not the police, to make that determination (People v Bouton, 50 NY2d 130, 135, supra).
The Appellate Division’s alternative holding was that defendant consented to go to the police station. There is no indication in the record, however, that the People relied on a consent theory at the suppression hearing and no such theory was discussed in the hearing court’s opinion, which found only that there was probable cause for defendant’s arrest. Accordingly, the People may not on appeal raise for the first time the claim that defendant consented (see People v Evans, 58 NY2d 14, 23-24, n 2; People v Knapp, 52 NY2d 689, 699 [Jasen, J., concurring]; People v Laskaris, 82 AD2d 34, 41-42).
Furthermore, the evidence adduced at the hearing does not support a determination that defendant consented. There is no question that defendant’s car was forcibly stopped and impounded and that Miranda warnings were administered at the scene, all of which is consistent with a custodial situation requiring probable cause, even if a *417 formal arrest had not been announced (see Dunaway v New York, 442 US 200; People v Brnja, 50 NY2d 366, 372). The only suggestion of consent was the officer’s affirmative response to the prosecutor’s question, “And did there come a time that this subject was asked to come down to the Albany Police Department for further investigation?” Read in context, however, the phrasing of the question reflects the prosecutor’s manner of speaking and does not establish that defendant was actually offered a choice. Short of testimony establishing that defendant went willingly to the police station, the evidence is insufficient to meet the People’s heavy burden of showing that defendant freely consented (see People v Gonzalez, 39 NY2d 122,128).
Inasmuch as the lineup identification followed directly from the illegal arrest and detention of defendant, it was error to admit evidence of that identification at trial (United States v Crews, 445 US 463, 472, 477; People v Brnja, 50 NY2d 366, 369, n 1, supra; People v Butler, 90 AD2d 797, 798). Moreover, the victim’s identification having been the primary evidence against defendant at trial, and that identification having been bolstered by evidence regarding the lineup, admission of the lineup identification cannot be deemed harmless error (see People v Crimmins, 36 NY2d 230).
There must, therefore, be a new trial because of the admission of testimony concerning the lineup identification. A further hearing must also be held, unless waived by defendant, with respect to admissibility of the in-court identification. Defendant’s motion was directed to both the lineup and the in-court identification, so his objection to the latter was sufficiently preserved, notwithstanding his failure to object at trial (People v Rahming, 26 NY2d 411, 417). The hearing Judge, having concluded that there was probable cause, made no finding of independent source, and although the Appellate Division did make such a finding, it was improperly based solely upon evidence adduced at trial (People v Gonzalez, 55 NY2d 720, 721-722). Defendant is, therefore, entitled to a hearing concerning whether the improper lineup “affect[ed] the reliability of the in-court identification and rendered] it inadmissible as well” (United States v Crews, 445 US 463, 472-473, supra; see People v Brnja, 50 NY2d 366, 369, n 1, supra).
*418 Defendant is not entitled, however, to dismissal of the indictment on the theory that the People should not be given “ ‘a second chance to succeed where once they had tried and failed’ ” (People v Havelka, 45 NY2d 636, 643; People v Bryant, 37 NY2d 208, 211) and, therefore, cannot prove a prima facie case. The Havelka-Bryant rule, based as it is on the potential for abuse and injustice through the tailoring of testimony to fit the requirements established by an appellate court’s opinion, is a bar to a second hearing on the admissibility of the lineup. It does not, however, foreclose a further hearing as to the in-court identification. The risk that the testimony as to independent source at a further hearing will be distorted is minimal where, as here, the victim has testified as to her source of identification at the trial (cf. People v Havelka, 45 NY2d, at p 644). Nor is there any inconsistency between so holding and refusing to hold the trial testimony sufficient to establish independent source. Defendant was entitled in advance of trial to a determination by a Trial Judge on the question of independent source. Moreover, his attorney may well have handled the issue differently when cross-examining the victim in the presence of the jury than he would have at the suppression hearing had the issue then been litigated by the People (see People v Werner, 55 AD2d 317, 319).
IV
Finally, as to the Trial Judge’s ruling that defendant’s two prior convictions could be used to impeach his credibility, no issue reviewable by this court is presented (People v Williams, 56 NY2d 236, 239; People v Brown, 48 NY2d 921). The record establishes that the Trial Judge’s ruling was made in the exercise of discretion and that it did not constitute an abuse of discretion as a matter of law.
For the foregoing reasons, the order of the Appellate Division should be reversed and a. new trial ordered, to be preceded, if defendant so requests, by a hearing on the admissibility of the in-court identification by Mrs. Culp.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Simons and Kaye concur.
Order reversed and case remitted to County Court, Albany County, for a new hearing of defendant’s motion to *419 suppress identification testimony and a new trial in accordance with the opinion herein.

 Compare subdivision 13 of section 10.00 of the Penal Law, defining a dangerous instrument as one “which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury.”