THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
WARREN WHITE, Appellant.

Second Department, May 12, 1986

## APPEARANCES OF COUNSEL

*Philip L. Weinstein (Bertrand J. Kahn of counsel; Sheryl M. Gross* on the brief), for appellant.

*Elizabeth Holtzman, District Attorney (Barbara D. Underwood, Michael Gore* and *Ann Bordley* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

According to the testimony at the hearing on the defendant's motion to suppress identification testimony and physical evidence, the victim testified that she disembarked from a train at the Ditmas Avenue subway station in Brooklyn between 6:30 P.M. and 7:00 P.M. on September 30, 1982. As she walked downstairs from the platform to the mezzanine, she saw a man hiding behind a doorway on the mezzanine. She had a frontal view of the man's entire face for "a couple of minutes" as she approached, and, as she passed, he grabbed her from behind, placed his arm around her neck, and dragged her back up the entire flight of stairs to the platform. As she was being dragged, she was able to turn her head and see his face two or three times. She lost consciousness temporarily and, when she regained it, she found herself sitting at the top of the steps with her assailant seated beside her. At that point, the man picked up her bag, which had been thrown to the ground several steps below where she was seated, continued down the steps, and ran away. After he was gone, she walked to a token booth, which was located at the far end of the station, and reported the incident to the man inside. The police were notified and, upon their arrival, she gave the following description of her attacker: black male, about six feet in height, weighing approximately 170 to 180 pounds, with short hair, wearing dark blue pants and a short-sleeve black tee shirt.

At approximately 7:00 P.M. that evening, Carlos Rivera, an off-duty Transit Authority Police Officer, was walking on

Cortelyou Road toward the Ditmas Avenue station. As he approached the intersection of McDonald Avenue, a person came running around the corner of Cortelyou Road, heading away from the station, and "practically bumped into" Rivera. As he stepped aside, Rivera was able to observe the person's face, and, in addition, he noticed that this person had something under his shirt as he continued to run. Rivera gave chase but was unable to maintain the pursuit, and he went to the Ditmas Avenue station. At the station, he spoke with the victim and learned, for the first time, what had just occurred. After hearing the victim's description of the man who had mugged her, Rivera left the station to look for the man he had seen running from the direction of the station. His search was unsuccessful, and he subsequently returned to the station.

As the foregoing events were transpiring, Police Officer Anthony Rao, an 18-year veteran of the Transit Authority Police, was on patrol on the "F" subway line in Brooklyn. At about 7:00 P.M., he was at the Avenue N station, which was six stations and approximately 5 or 10 minutes away from the Ditmas Avenue station, when he received a radio transmission advising that a black male, about six-feet tall and weighing 180 pounds, and wearing a dark short-sleeve shirt and dark blue pants, was wanted for a mugging that had occurred about 10 minutes earlier at the Ditmas Avenue station. Some 5 or 10 minutes after this transmission was received, Rao heard the southbound "F" train entering the station, and he proceeded upstairs and entered that train to resume his patrol. The southbound train was coming from the direction of the Ditmas Avenue station. As he entered the subway car, he observed the defendant seated therein, and Rao determined that the defendant matched the description he had received on his radio. According to Rao, who was then in uniform, the defendant looked at him and then shied away, and he appeared to the officer to be "tense" and "suspicious". Rao asked the defendant where he was coming from, and he replied that he was traveling from Delancey Street in Manhattan. At the next stop, which was the Avenue P station, Officer Rao took the defendant off the train, handcuffed him on the platform, brought him downstairs to the mezzanine and, although Rao did not observe any bulges, he conducted, for his own safety and for the safety of others in the station, a search of defendant's person for weapons. In the pocket of defendant's pants, Rao found a $5 bill, a $1 bill, several quarters and several subway tokens. Rao then contacted headquarters and reported

that he was holding a suspect in the Ditmas Avenue station incident. Within five minutes, a police car transporting the victim from the Ditmas Avenue station arrived at the Avenue P station, where the victim identified the defendant in a showup as her assailant. The defendant was then transported by the police to the Ditmas Avenue station, where Officer Rivera identified him in a second showup as the person he had chased earlier that evening.

Upon this evidence, the defense argued that the seizure of the defendant's person by Officer Rao had been unlawful inasmuch as the description known to him at the time lacked the requisite specificity and detail to provide probable cause for an arrest. Therefore, the subsequent search and showup identifications by the victim and Officer Rivera, being the products of that illegal seizure, had to be suppressed. Moreover, the defense asserted that the circumstances of the initial observations of the defendant by the victim and Rivera were such as to preclude a finding that there was an independent basis for their respective identifications.

Criminal Term denied the motion to suppress in its entirety, holding that the showups, which were conducted within a short time after the crime, were lawful, and that the fruits of the search would, in any event, have been inevitably discovered by the police when they searched the defendant after he had been identified. Although the suppression court made no determination with respect to probable cause or whether there existed an independent basis for the witness' identification, this court has the power to make such findings where a fair and full hearing on the motion to suppress provides an adequate record (People v Le Grand, 96 AD2d 891; People v Acosta, 74 AD2d 640).

It is evident from the facts established at the hearing that the defendant was taken into custody and "seized", so as to implicate the constitutional requirement of probable cause (see, US Const 4th Amend; NY Const, art I, § 12), when Officer Rao removed him from the subway car and handcuffed him on the platform of the Avenue P station (see, People v Dodt, 61 NY2d 408, 416-417; People v Brnja, 50 NY2d 366, 372). If probable cause existed at the time of the arrest, then there was no constitutional infirmity with respect to the subsequent at-the-scene showups in view of their temporal proximity to the crime itself (see, People v Brnja, supra; People v Kennerly, 117 AD2d 624; People v James, 116 AD2d 663; People v Arnette, 111 AD2d 861, 862). Further, if the arrest is found to have

been supported by probable cause, the ensuing search of the defendant's person would pass constitutional muster as having been incident to a lawful arrest *(see, New York v Belton,* 453 US 454; *Chimel v California,* 395 US 752). This appeal, therefore, turns on the question of whether Officer Rao had probable cause to arrest the defendant.

It is fundamental that a police officer may arrest a person without a warrant when he has probable cause to believe that such person has committed a crime *(People v Johnson,* 66 NY2d 398, 402). While probable cause does not require the same quantum of proof necessary to warrant a conviction *(People v Bigelow,* 66 NY2d 417, 423; *People v McRay,* 51 NY2d 594, 602; *People v Miner,* 42 NY2d 937, 938), it does require the existence of facts and circumstances which, viewed together, would lead a reasonable person possessing the same expertise as the arresting officer to conclude that an offense has been or is being committed *(Brinegar v United States,* 338 US 160, 175-176; *People v Bigelow, supra; People v McRay, supra; People v Maisonet,* 116 AD2d 594). It must appear to be more probable than not that an offense had occurred or was occurring and that the person arrested was the perpetrator *(People v Carrasquillo,* 54 NY2d 248, 254; *People v Hendrie,* 117 AD2d 752; *People v Gordon,* 87 AD2d 636, 637). Where, as here, the defendant moves to suppress evidence as the fruits of an unlawful arrest, the burden is cast upon the prosecution to come forward, in the first instance, with evidence establishing probable cause for the arrest *(People v Dodt,* 61 NY2d 408, 417-418, *supra; People v Bouton,* 50 NY2d 130, 135; *People v Berrios,* 28 NY2d 361, 367; *People v James,* 110 AD2d 1037).

A police officer may have probable cause to effect a warrantless arrest where he observes a suspect in proximity to the scene of the crime and to the time of its commission, and the suspect's appearance matches a sufficiently detailed and particular description of the perpetrator which has been received by the officer *(see, e.g., People v Mercado,* 117 AD2d 627; *People v Chamberlain,* 114 AD2d 966; *People v Arnette,* 111 AD2d 861, 862, *supra).* However, a description which is meager and lacking in specificity may be insufficient, without more, to establish probable cause to arrest *(see, e.g., People v Riddick,* 110 AD2d 787; *People v Lane,* 102 AD2d 829, *appeal dismissed* 63 NY2d 865; *People v Gordon,* 87 AD2d 636, *supra).*

In this case, the prosecutor properly adduced evidence at the suppression hearing of the physical description provided by the victim to the police, the physical description received

by Officer Rao in the radio transmission, and the defendant's physical appearance at the time of his arrest, so as to permit an independent judicial determination of whether the arrest was predicated upon probable cause (see, People v Dodt, 61 NY2d 408, 416, supra; People v Ferguson, 115 AD2d 615; People v Brodie, 87 AD2d 653). However, our assessment of the foregoing evidence leads us to conclude that the People failed to sustain their burden of coming forward with proof establishing probable cause for the defendant's arrest (see, People v Dodt, supra, at p 415; People v Bouton, 50 NY2d 130, 135, supra; People v Berrios, 28 NY2d 361, 367, supra; People v James, 110 AD2d 1037, supra). The description received by Officer Rao was that of a black male, about six-feet tall and weighing 180 pounds, and wearing a dark short-sleeve shirt and dark blue pants; the officer had no information regarding the suspect's age, build, hair style or other distinguishing physical characteristics. In our view, this description was too general and vague to render it more probable than not that the defendant was the person who had committed a crime approximately 15 minutes earlier at another Brooklyn subway station six stops away from where he was apprehended, particularly where the offender had last been seen running on the street in a direction away from the station where the crime had occurred (see, People v Carrasquillo, 54 NY2d 248, 254, supra; People v Hendrie, 117 AD2d 752, supra; see also, People v Riddick, 110 AD2d 787, supra; People v Lane, 102 A2d 829, appeal dismissed 63 NY2d 865, supra; People v Gordon, 87 AD2d 636, supra). Moreover, although Officer Rao described the defendant's behavior prior to his arrest as "suspicious", the only articulable objective fact discerned by the officer was that the defendant appeared to be avoiding eye contact with him. Under these circumstances, such behavior was too ambiguous and equivocal to reasonably elevate the officer's suspicions to the level of probable cause for an arrest (see, e.g., People v Howard, 50 NY2d 583, 590).

■ Having determined that the arrest was unlawful, it follows that the showups which immediately followed, and which were the direct result of the illegal detention, should have been suppressed as the "fruit of the poisonous tree" (United States v Crews, 445 US 463, 471; Wong Sun v United States, 371 US 471; People v Dodt, 61 NY2d 408, 417, supra; People v Riddick, supra, at p 788; People v Lane, supra, at p 831; People v Butler, 90 AD2d 797, 798, appeal dismissed 58 NY2d 1056; People v Gordon, supra, at p 637). Thus, the

admission of evidence of the showup identifications by the victim and Officer Rivera at the defendant's trial was error, and because the primary evidence against the defendant consisted of the in-court identification testimony of the victim and Rivera, which testimony was bolstered by their testimony regarding the tainted showup identifications, the admission of the latter testimony cannot be deemed harmless error *(People v Dodt, supra,* at p 417; *People v Lane, supra,* at p 831; *cf. People v Adams,* 53 NY2d 241; *People v Smalls,* 112 AD2d 173, 174-175; *People v Smallwood,* 99 AD2d 819, 820).

It is, of course, well settled that an in-court identification of the defendant will not be suppressed merely by reason of an antecedent unlawful seizure, so long as the People establish, by clear and convincing proof, that the in-court identification is derived from the witness' independent recollection *(United States v Crews,* 445 US 463, *supra; United States v Wade,* 388 US 218, 240, n 31; *People v Pleasant,* 54 NY2d 972, 973, *cert denied* 455 US 924; *People v Brnja,* 50 NY2d 366, 369, n 1, *supra; People v Burwell,* 26 NY2d 331, 336). In this case, the defendant's motion sought suppression of both the showup identifications and the in-court identifications. However, Criminal Term made no determination on the question of whether there existed an independent basis for the latter. Although we may not make our own finding of an independent source based upon trial testimony *(see, People v James,* 67 NY2d 662; *People v Wilkins,* 65 NY2d 172, 180; *People v Dodt,* 61 NY2d 408, 417, *supra; People v Gonzalez,* 55 NY2d 720, 721-722, *cert denied* 456 US 1010), we may do so upon the record of a fair and full hearing on a motion to suppress evidence *(People v Le Grand,* 96 AD2d 891, *supra; People v Acosta,* 74 AD2d 640, *supra).* In this case, the hearing record contains evidence which clearly and convincingly establishes that the in-court identifications of the defendant by the victim and Officer Rivera were derived from an independent source, i.e., their observations at or about the time of the crime *(see, e.g., People v Smalls,* 112 AD2d 173, 174, *supra),* and upon retrial, such testimony as to the in-court identifications of the defendant shall be admissible.

Finally, because the defendant's arrest was unlawful, the fruits of the search of his person incident to that arrest must be suppressed as well *(cf. People v Mercado,* 117 AD2d 627, *supra).*

We have considered the defendant's other claims and find them to be either lacking in merit or unpreserved for appel-

late review. Although the defendant was improperly sentenced on a count of the indictment on which he was acquitted, that error is rendered academic by our order reversing the judgment of conviction and directing a new trial.

BRACKEN, J. P., LAWRENCE, EIBER and KOOPER, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered September 2, 1983, reversed, on the law and the facts, the defendant's motion granted to the extent that testimony as to the showup identifications of him and the physical evidence seized from his person are suppressed, and new trial ordered.