■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN K. WHITAKER, Appellant.—Appeal by the defendant from a judgment of the County Court, Dutchess County (Kessler, J.), rendered June 30, 1982, convicting him of robbery in the first degree and burglary in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

Although there were no findings of fact and conclusions of law issued by the hearing court in connection with the Wade hearing, this court may make the necessary findings where, as here, there was a full and fair hearing on the motion to suppress and an adequate record has been made (see, People v White, 117 AD2d 127, 130; People v Acosta, 74 AD2d 640).

Accordingly, we have reviewed the record and find that Eileen Mahoney was able, on two occasions, to clearly view the gunman who entered the home of her father, Richard Mahoney, on the evening of September 11, 1982, and that Richard Mahoney was also able to clearly view the gunman, who stood five feet away from him; that Eileen Mahoney, subsequent to the burglary, viewed the 1979 and 1980 Poughkeepsie High School yearbooks, which she obtained from a neighbor, picked out the defendant's picture from one of those yearbooks and was alone in the kitchen when she did so; that Eileen Mahoney then showed the yearbook photograph to Detective Enno Groth who ordered a photographic array containing a photograph of the defendant to be made up and brought to the Mahoney home; that Detective Groth showed the photographic array to Eileen and Richard Mahoney separately and that both independently selected the defendant's photograph as being the gunman; that after viewing the

photographic array, Eileen Mahoney showed her father the yearbook photograph of the defendant; that early on the morning of September 12, 1981, Eileen Mahoney viewed the defendant in a room in a police station through a one-way mirror at the direction of a person whom she does not remember; that early on the morning of September 12, 1981, Richard Mahoney was passing a one-way mirror in a police station when he saw the defendant, and no one directed his attention to the one-way mirror or asked him to look through it; and that both Eileen and Richard Mahoney identified the defendant as the gunman at the *Wade* hearing and were positive about their identifications.

Under the circumstances, we find that none of the witnesses' identifications was tainted by suggestive police procedures. Eileen Mahoney's viewings of the defendant's photograph in the yearbook were not the product of police action but rather the fruit of her own independent activities and therefore may not be considered suggestive *(see, People v Parente,* 104 AD2d 667; *People v Laguer,* 58 AD2d 610). Further, Eileen Mahoney's viewings of the photographic array and of the defendant at the police station were merely confirmatory, and not an identification, as the defendant was known to her *(see, People v Tas,* 51 NY2d 915; *People v Gissendanner,* 48 NY2d 543; *People v Levy,* 123 AD2d 885; *People v Fleming,* 109 AD2d 848). Richard Mahoney's viewing of the photographic array was not suggestive, as the defendant's photograph was in no way highlighted in the array, was not the only one similar to the original description of the defendant, and the record reveals no evidence that the array displayed the defendant's photograph in an unduly suggestive manner *(see, People v Coleman,* 115 AD2d 488, 489; *People v Garcia,* 115 AD2d 617, 618). The viewing of the defendant by Richard Mahoney at the police station by mere happenstance and not due to any fault on the part of law enforcement officials did not unlawfully taint his identification of the defendant *(see, People v Logan,* 25 NY2d 184, 193, *cert denied* 396 US 1020; *People v Bookhart,* 117 AD2d 739, 740).

Moreover, the People established by clear and convincing evidence at the *Wade* hearing that the proffered in-court identifications had an independent origin based upon the Mahoneys' opportunity to clearly view the defendant in good light and in close quarters during the commission of the crime *(see, People v Jones,* 125 AD2d 333; *People v Malphurs,* 111 AD2d 266, 268).

The defense opened the door to the admission into evidence

of the prior photographic identification of the defendant *(see, People v Caserta,* 19 NY2d 18, 21; *People v Grate,* 122 AD2d 853; *People v Smalls,* 115 AD2d 783, 784). Further, on the basis of the facts of this case, the failure of the trial court to give an identification charge was harmless error *(see, People v Crimmins,* 36 NY2d 230, 242; *People v Johnson,* 124 AD2d 677).

We have considered the other issues raised by the defendant, including those raised in his *pro se* brief, and find them to be without merit. Brown, J. P., Rubin, Kooper and Sullivan, JJ., concur.