■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMILO SIMPSON, Appellant.—Judgment, Supreme Court, New York County (Howard E. Bell, J.), rendered June 21, 1989, convicting defendant, upon a jury verdict, of robbery in the second degree and sentencing him, as a persistent violent felony offender, to an indeterminate term of imprisonment of from seven and one-half to fifteen years, reversed, on the law and the facts, defendant's motion to suppress any out-of-court identification evidence is granted and the matter is remitted for a new *Wade* hearing to determine whether an independent source exists for any in-court identifications of defendant and a new trial.

Defendant and a co-defendant were indicted for the crime of robbery in the second degree. At the *Dunaway/Wade* hearing conducted before trial, Police Officer Carl Columbia testified that he saw defendant and Michael Hobday at 5:25 P.M. on June 4, 1988 while he was stationed at Platform 6 of the Canal Street subway station. The men drew the uniformed officer's attention because he had received a radio run earlier in the day with regard to a robbery that had occurred at 10:45 A.M. at the Chambers Street station. The report described the perpetrators of that robbery as a white male, over six feet tall, wearing dark clothing and a black male, approximately 40 years of age. Columbia became suspicious because the description matched defendant and Hobday and because the two men broke eye contact with him, sat down on a bench and glanced in his direction.

Columbia called his command district to get an update on the description of the robbery suspects and was told that the black suspect was short and that the white male might be Hispanic. The precinct did not know if the suspects had been armed. Columbia testified that he thought it was "possible" that defendant and Hobday were the perpetrators and requested back-up assistance. He then stopped them and without any inquiry, directed them to stand up and put their hands against the wall. When they asked what was going on, Columbia told them that they fit the description of perpetrators of a robbery. He then frisked defendant and recovered a hypodermic syringe. Defendant was placed under arrest and was later identified by the complainant at a lineup.

The Supreme Court concluded that defendant's arrest was based on probable cause and that the lineup was not unduly suggestive. Defendant's motion to suppress any out-of-court identification evidence was, therefore, denied. After trial, defendant was convicted of robbery in the second degree.

We agree with defendant that Officer Columbia lacked probable cause to arrest him and that any evidence of the lineup identification must be suppressed as fruit of the poisonous tree.

The prosecution had the burden of establishing probable cause for defendant's arrest after he moved to suppress the complainant's lineup identification as the fruit of his unlawful arrest *(People v Dodt,* 61 NY2d 408; *People v Berrios,* 28 NY2d 361). In order to establish probable cause, the People must introduce facts and circumstances, including the description upon which the police acted which, when viewed together,

would lead a reasonable person possessing the same expertise as the arresting officer to conclude that an offense has been or is being committed and that the person arrested was the perpetrator. *(People v Dodt, supra; People v White,* 117 AD2d 127, *lv denied* 68 NY2d 818.)

"A police officer may have probable cause to effect a warrantless arrest where he observes a suspect in proximity to the scene of the crime and to the time of its commission, and the suspect's appearance matches a sufficiently detailed and particular description of the perpetrator which has been received by the officer *(see, e.g., People v Mercado,* 117 AD2d 627; *People v Chamberlain,* 114 AD2d 966; *People v Arnette,* 111 AD2d 861, 862, *supra).* However, a description which is meager and lacking in specificity may be insufficient, without more, to establish probable cause to arrest *(see, e.g., People v Riddick,* 110 AD2d 787; *People v Lane,* 102 AD2d 829, *appeal dismissed* 63 NY2d 865; *People v Gordon,* 87 AD2d 636, *supra)" (People v White, supra,* at 131; *and see, People v Lee,* 126 AD2d 568).

While probable cause was established for defendant's arrest for a series of robberies in *People v Polk* (166 AD2d 177, *lv denied* 76 NY2d 1023), despite a lapse of almost two days from the date of the commission of the last robbery to defendant's arrest, in that case the officers were provided with a more detailed description of Polk and his cohort than that provided of defendant and Hobday. Polk and his partner matched the description and were spotted in the precise location of the most recently reported robbery. The police had also noticed that the cohort had been in the station for two hours and had placed himself out of view of other passengers.

The officers then approached and inquired as to the reason for Polk's and the other man's presence at the station. The cohort's responses were inconsistent and did not satisfactorily establish a reason for his presence in the station for two hours. When asked for identification, he produced a meal ticket from a shelter with someone else's name on it. Because Polk and the other man became agitated during the questioning, the officer frisked the other man and recovered a weapon. The officers had previously received information that the perpetrators of the robberies had used or threatened the use of weapons.

Unlike the situation in *Polk (supra),* the initial description received by Officer Columbia of the perpetrators of the Chambers Street station robbery, which occurred some six hours

before he observed defendant and Hobday at the Canal Street station, was too general, vague and stale to render it more probable than not that they were the individuals who committed the robbery *(People v White, supra)*. Nor did the addition of the updated information he received from his command provide the requisite specificity.

The actions of defendant and Hobday, in breaking eye contact with the officer, sitting on the bench and then in glancing in his direction, were neither suspicious nor even particularly unusual *(People v Corrado,* 22 NY2d 308, *rearg denied* 23 NY2d 921; *cf., People v Polk, supra)*. While an officer is entitled to draw on his expertise as a criminal investigating officer, he may not draw the inference of criminality when others would not *(People v Corrado, supra)*. Under the circumstances, the behavior of defendant and Hobday was too ambiguous and equivocal to elevate Columbia's suspicions to the level of probable cause for defendant's arrest *(People v White, supra)*.

Unlike the officers in *Polk (supra)*, Officer Columbia immediately seized defendant and Hobday, placed them against the wall and frisked them. He made no inquiry as to their identity or as to the reason for their presence in the station. Nor did he possess the information acquired by the officers in *Polk,* that the perpetrators of the robbery were armed. The actions of Officer Columbia in immediately placing defendant in custody and frisking him were therefore excessive *(see, People v Stewart,* 41 NY2d 65).

Since the arrest was unlawful, the lineup evidence should have been suppressed as " 'fruit of the poisonous tree' " *(United States v Crews,* 445 US 463, 471; *Dunaway v New York,* 442 US 200; *Wong Sun v United States,* 371 US 471; *People v Dodt, supra; People v White, supra)*. The admission of evidence of the lineup identification at defendant's trial was also error *(People v Johnson,* 66 NY2d 398; *People v White, supra)* which cannot be deemed harmless since the complainant's identification was the primary evidence against defendant at trial and was bolstered by evidence regarding the lineup *(People v Dodt, supra; People v White, supra)*.

We disagree with defendant's contention, however, that the lineup conducted was suggestive and tainted the complainant's in-court identification of him. Defendant was permitted to choose his own number and position in the lineup. The members of the lineup were seated to reduce any height discrepancies and wore caps to disguise differences in hair styles. Defendant and the stand-ins also wore similar sweat-

shirts to standardize their appearance. Although defendant had a moustache, several stand-ins had facial hair as well. While he was 45 years old and the ages of the other members of the lineup ranged from 25 to 39 years of age, the photographs of the lineup demonstrate that the stand-ins reasonably resembled defendant in appearance. There is no requirement "that a defendant in a lineup be surrounded by people nearly identical in appearance *(People v Mason,* 138 AD2d 411, 412; *People v Collins,* 136 AD2d 720, 721)" *(People v Chipp,* 75 NY2d 327, 336, *cert denied* — US —, 111 S Ct 99). The record supports the Supreme Court's conclusion that the lineup conducted was not unduly suggestive *(People v Mason, supra; People v Collins, supra).*

Since the Supreme Court determined that defendant's arrest was based on probable cause and that the lineup was neither the fruit of the poisonous tree nor unduly suggestive, it did not reach the issue of whether an independent source existed for any in-court identification of defendant. Accordingly, the matter is remitted for a new trial, prior to which the People will be provided with the opportunity to establish, by clear and convincing proof, that any in-court identification is derived from the witness' independent recollection *(United States v Crews, supra; People v Dodt, supra).* Concur—Sullivan, J. P., Rosenberger, Asch and Kassal, JJ.

Kupferman, J., dissents and would affirm for the reasons stated by Howard E. Bell, J.