■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK PEJCINOVIC, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ADAM PEJCINOVIC, Appellant.— Judgment of the Supreme Court, Bronx County (George D. Covington, J.), rendered on February 8, 1989, which, following a jury trial, convicted defendant Adam Pejcinovic of two

counts each of assault in the first degree and criminal possession of a weapon in the fourth degree and defendant Frank Pejcinovic of assault in the first degree and criminal possession of a weapon in the fourth degree and sentenced the former to two indeterminate terms of imprisonment of from three to nine years and two definite one year terms, all to run concurrently, and adjudicated the latter a youthful offender with a term of one to three years' imprisonment to run concurrently with a one year term, is unanimously reversed on the law as to both defendants and the matter remanded for a new trial before another Justice.

On July 28, 1986 at approximately 4:30 P.M., Ramon Rivera and his friend, Pedro Molina, two Spanish-speaking Puerto Ricans, were attacked near the intersection of 188th Street and Arthur Avenue in the Bronx. Someone threw a glass bottle at them but when they endeavored to ignore the provocation, Rivera observed a person hit his companion with a baseball bat. Molina fell to the ground, and Rivera, in order to protect the other man, threw himself on top of Molina. After Rivera had himself absorbed three blows from the bat, he was shoved up against a car about three times. That evening at St. Barnabas Hospital, as the less injured of the two complainants, Rivera described the perpetrators to Police Officer Quinn with the assistance of unofficial translators. The officer's ensuing report stated as follows: "(Perp. #1) male, white, age 16, height 5′ 11″, weight 160 lbs with brown medium length hair. (Perp. #2) works in Carvel—187th Street and Cambreling Ave., male, age 16, height 5′ 7″, eyes green, hair blonde, medium length." Detective Golub, also relying upon unofficial interpreters, reinterviewed Rivera later that same evening and noted in his report that "Rivera stated that he has seen one of the subjects * * * a few times within the last few weeks at the Carvel store * * * Rivera describes the subject as a male/white/16 yrs old/5′ 7″/150 lbs/green eyes/blonde medium length hair. He describes the subject with the baseball bat as a male/white/16 yrs old/5′ 11″/160 lbs/brown medium length hair."

Following his discharge from the hospital that same night, Rivera went to the precinct house and informed Detective Golub, again through interpreters, that he had just seen one of his assailants at the Carvel store and that a blue Cadillac driven by the bat-wielder was parked around the corner from that store. He advised Detective Golub and his partner that the youth with the bat was a white male, 16 years of age, 5′ 11″ tall and having medium length hair. It should be noted

that Rivera's subsequent depiction of the attackers varied from his initial ones, and at trial Rivera testified that the bat-wielder had a strong muscular build, was approximately 5′ 7″ to 5′ 9″ tall with short curly hair and skin that "looked * * * Puerto Rican". The second person was detailed by him as being a skinny white about 5′ 10″ or 5′ 11″ tall with hair that was "a little bit straight", while a third culprit was a blond "American" having "skinny, straight hair" and light eyes.

As a consequence of Rivera's account, one Albert Giacoio was arrested at Carvel, and a stakeout of the blue Cadillac was undertaken by the police on Detective Golub's orders that any white male entering the vehicle was to be brought in for investigation. The surveillance of the automobile resulted in the apprehension of defendants Adam and Frank Pejcinovic and their cousin Dennis Kolasinac, who was later released; all three are caucasians of Yugoslavian extraction. Adam and Frank denied any involvement in the assault but were placed in separate lineups apparently comprised entirely of Hispanic or black fillers. Rivera identified Frank as the person who had pushed him against the car and Adam as the perpetrator with the bat. In the lineup relating to Adam, all of the participants were directed to remove their shirts before Rivera finally picked him out. It is significant that defendants were formally charged with the bias incident notwithstanding that they did not particularly match the descriptions of the perpetrators. Equally disturbing is that on August 6, 1986, a police detective named Gerald Cotto wrote a report which declared that: "Subject: BIAS INCIDENT AT 188TH & CICCORONI PARK. 1. The following was relayed to this office by a member of the community who stated that the attack on the Hispanic in Ciccoroni park was perpetrated not by the perpetrator in custody, but by one John alias Eggabomb, male white, 16-17 years old, 5′ 9″, Husky with black hair. Allegedly hangs out at Nathans—Central Avenue, and at Dominick's restaurant on Arthur Ave. He is said to drive a 1978 white T Bird with red top and spoke wheels."

Although the foregoing information, as aptly pointed out by the People, rested upon hearsay since it was supplied by a woman who declined to give her name and was evidently not a witness to the attack, there is no indication that Detective Golub, who received Detective Cotto's report several days after defendants' arrest, ever attempted to verify its accuracy notwithstanding that it contained specific facts. Further, the existence of the document was never revealed to defendants so that they could pursue their own investigation, and they only

obtained the report by chance in the autumn of 1988 when they subpoenaed the F.B.I. file. As for the other material in the F.B.I. file, it also disclosed contradictory versions of the perpetrators' appearance. Thus, in October of 1986, Detective Golub relayed the description of the bat-wielder furnished to him by Rivera at St. Barnabas Hospital—that is, a white male with medium length brown hair; Molina remembered only that the boys were white. However, by January of 1987, Rivera provided the F.B.I. with a rather different physical characterization when he asserted that the batterer was dark-complexioned, curly-haired, muscular and had a scar on his torso (evidently a close depiction of Adam). He also supplied details of the pusher and outlined the clothes supposedly worn by the assailants, but these descriptions conflicted with those initially given to the police.

This matter eventually came to trial following the denial by the court of defendants' pretrial suppression motions, and thirty-three witnesses took the stand (seven for the prosecution and the rest for the defense). Defendants in large part, urged that they had been misidentified and/or that they possessed alibis for the crucial time. Of the People's witnesses, Rivera was the only one who was able actually to pick out defendants as the attackers. Inexplicably, the defendant most positively identified, Albert Giacoio, was the only one acquitted. While on appeal the two remaining defendants raise numerous grounds on behalf of their contention that they were deprived of their right to a fair trial as a result of, in part, a series of errors committed by the court in the course of the proceedings, it is unnecessary to reach most of the arguments which they advance since it is clear that defendants' arrest was unsupported by probable cause. Indeed, the evidence submitted at the pretrial hearings demonstrates that Detective Golub had instructed other police officers to keep watch over the blue Cadillac and apprehend any white male who attempted to enter the vehicle (regardless of whether or not he matched any of the descriptions conveyed by Rivera). Both Frank and Adam were, therefore, arrested merely because they came into contact with the subject car and for no other reason and did not fit the original physical portraits of the attackers. According to the fact finding by the trial court: "A surveillance team was immediately assigned to 'sit on the vehicle' in question. On July 29, 1986 at 6:30 p.m., P. O. Carmine Varricchio appeared in Det. Golub's office with one Frank Pejcinovic in custody. P. O. Varricchio informed Det. Golub that he had observed Frank Pejcinovic parking the

subject vehicle near 187th Street & Arthur Ave. * * * and had placed him under arrest. One hour later at 7:30 p.m. Det. Pepard entered Det. Golub's office with one Adam Pejcinovic in custody. Det. Pepard explained that he had arrested Adam Pejcinovic as he was opening the rear door of the Cadillac."

Although acknowledging that any testimony arising out of a lineup identification that is the fruit of an illegal arrest is inadmissible at trial *(People v Dodt,* 61 NY2d 408), and defendants certainly did not voluntarily accompany the officers to the stationhouse to assist in the investigation, the court nonetheless determined that "the arrests of both Frank and Adam Pejcinovic were based on a detailed description provided by the complainant." Yet, the two youths were not arrested because of the physical data supplied by Rivera to which the police made no effort to compare them and which they did not, in any event, match, but solely because they entered or approached the Cadillac. Moreover the Cadillac itself was in no way connected to the assault on Molina and Rivera, and, of the perpetrators, only the bat-wielder was ever linked to the vehicle, and even the description of the bat-wielder did not sufficiently depict Adam so as to justify his arrest. It is the responsibility of the People to establish that the description upon which the police acted is an adequate predicate for the arrest *(see, People v Dodt, supra),* a burden which they clearly failed to sustain here. Therefore, even assuming that the lineups conducted in the instant case had not been unduly suggestive, a fact strongly contested by defendants, any evidence derived therefrom should have been suppressed as the product of an illegal arrest.

Finally, we deem it appropriate to comment on one aspect of defendants' post-judgment motion to vacate their convictions, specifically that portion based upon the existence of newly discovered evidence. In that regard, defendants urge that shortly before the conclusion of the trial, they learned through the testimony of a witness, Gloria Mercado, the real last name of John Eggabomb, as well as other facts, which, with leads contained in the Cotto report, enabled them with difficulty eventually to locate and confront John Guiliano. They assert that in December of 1988, subsequent to the entry of the verdict but prior to the imposition of sentence on February 8, 1989, Guiliano admitted his involvement in the incident and promised to discuss the situation with his own attorney and come forward with exculpatory information. When he failed to show up for a scheduled appointment and, instead, disappeared once again, defendants were compelled to

undertake another search for his whereabouts. Ultimately, Frank and his cousin Dennis Kolasinac, it is stated, concealed a recording device and taped a conversation with him which fully corroborates his guilt for the crimes mistakenly charged to Adam Pejcinovic and reveals the innocence of both Pejcinovics. Defendants allege that in an affidavit signed by Guiliano and also in the surreptitiously recorded discussion, he concedes that it was he and his friends who assaulted Molina and Rivera. In view of the prosecution's lack of disclosure with respect to the Cotto report, the incomprehensible failure of the police at any time to conduct even a cursory investigation into the possibility that there was some substance to John Eggabomb's implication in the attack on the complainants and the fact that defendants' conviction largely rested upon one person's identification, the trial court should at least have held a hearing in the interests of justice to ascertain whether Guiliano's "confession" could be considered at all reliable (see, People v Crimmins, 38 NY2d 407). However, since defendants are entitled to a new trial due to the improper admission of the identification testimony flowing from their illegal arrest, a hearing at this point would be superfluous. Concur—Milonas, P. J., Rosenberger, Kassal and Rubin, JJ.