OPINION OF THE COURT
Ira H. Wexner, J.
The defendants, Rocco Pannetta and Ricardo Vila, have been indicted for conspiracy in the second degree and murder in the second degree. Defendant Rocco Pannetta has also been indicted for criminal facilitation in the second degree. The charges are the result of a murder, unsolved for almost three years, when on March 3, 1987 in the late afternoon, Filippa Savoy was shot in her automobile while driving on her way home from work.
*31 According to stipulations in lieu of motions dated October 18, 1990 between the Assistant District Attorney and counsel for defendant Vila, this court directed a hearing to be held under People v Huntley (15 NY2d 72 [1965]) and United States v Wade (388 US 218 [1967]). In a decision and order dated November 26, 1990 this court directed a hearing under Huntley (supra) and Mapp v Ohio (367 US 643 [1961]) to be held concerning defendant Rocco Pannetta, as factual contentions were in dispute. (People v Bogle, 100 AD2d 762, 763 [1st Dept 1984].)
The People called the following witnesses: Detective George Pierce, Detective Joseph Volpe, Assistant District Attorney Barry Grennan, Detective Sergeant William Cocks, New York State Investigator James Bezio and Detective Jeremiah Wright. I give credence to their testimony. The defendant called his former attorney, Michael Griffith, to the stand. For the most part, I give credence to Mr. Griffith’s testimony.
Pursuant to CPL 710.60 (6), the following shall constitute the findings of fact, conclusions of law, and reasons for the determination.
FINDINGS OF FACT
Shortly after Filippa Savoy’s bullet-ridden body was found on Town Path Road in East Hills, Nassau County, Detective George Pierce was assigned to the matter and began the police investigation. One of the first individuals he spoke to was a close friend of Savoy’s who told the detective that Savoy had confided to her that a person named Rocco Pannetta was going to kill Savoy over moneys that had been put into Pannetta’s tanning salon in Bethpage.
On or about April 27, 1989 Detective Pierce learned that both Pannetta and Ricardo Vila, a one-time employee of Pannetta, were charged with a house robbery and shooting of a homeowner in Westchester County. However, when Pierce asked to speak to Pannetta, he was told by Pannetta that he had now retained counsel and was inclined not to speak to him. At that point, the conversation ended and Detective Pierce ceased contacting Pannetta.
Almost one year later on January 9, 1990, Nassau County Homicide Squad Detective Joseph Volpe received a telephone call from Michael Griffith, an attorney for Pannetta regarding his Westchester criminal matter. Griffith asked Detective Volpe to come to his office on the evening of January 11, 1990, *32 for a conference call from Pannetta, who was by that time, a sentenced prisoner on the Westchester case. At the January 11th telephone conference call Pannetta told Detective Volpe, with Griffith present, that Filippa Savoy was murdered because she had spurned the affections of Ricardo Vila, and was shot in her car by Vila while a person named Darren, who was later identified as codefendant Darren Johnson, was the driver of the car in which Vila was a passenger. It was made known to the detective that this information was being provided by Pannetta in return for assistance in the handling of his Westchester case, including the favorable recommendation by Nassau to Westchester to enable Pannetta to have his plea vacated or to have bail posted pending the appeal.
Unbeknownst to Detective Volpe, Detective Pierce had been in contact with one Michael J. Wren, who told Pierce that Ricardo Vila had told him that he had killed Savoy at the request of Pannetta. Both Pierce and Volpe were provided with a written statement to that effect by Wren on January 13, 1990.
On March 12, 1990 Rocco Pannetta was brought to Nassau County from his upstate prison for further questioning by the Nassau Police. He met with Detectives Pierce and Volpe, as well as others on March 16 and March 20, 1990, where he provided the officers with a written statement conforming to his January 11th conversation. At all times Pannetta’s counsel, Mr. Griffith, was present and he signed the statement, along with Pierce and Pannetta.
There came a point during the meetings that the detectives told Pannetta and Griffith that there would come a time, after they checked out his story, that they would have to travel back upstate to see Pannetta further. This court gives credence to the detectives’ testimony that Pannetta stated that he waived his right to counsel for those future meetings, in the presence of his attorney. In addition, Mr. Griffith agreed that he would have no difficulty with his absence from these future meetings and placed no conditions on his further notification.
Following this meeting with Pannetta, events started to move quickly. On May 31, 1990 a fellow employee of Filippa Savoy was able to pick Ricardo Vila out of a six-picture photopak as a person in the office parking lot on the day of Savoy’s murder. On June 3, 1990 Detective Pierce traveled to Georgia where he spoke to Darren Johnson. Johnson told the *33 detective that he was the driver of the vehicle when Vila shot Savoy. He also stated the murder was requested by Pannetta and he witnessed Pannetta pay Vila cash and cocaine the day after the shooting.
On June 8, 1990 Detective Pierce and Detective Jeremiah Wright went to Watertown Correctional Facility for the purpose of interviewing Ricardo Vila. They arrived at the facility at 10:30 a.m. and spoke to New York State Investigator James Bezio, who is charged with arranging meetings between sentenced prisoners like Vila and authorities outside the State prison system. The detectives were told they could only speak to Vila if he consented and that Vila could terminate the conversation at any time he chose.
At approximately 11:00 a.m. Pierce, Wright and Bezio met with Vila and advised him that he was not in the custody of the Nassau Police and was free to leave or terminate the meeting immediately or any time during their discussion. This court gives credence to the detective’s testimony that Vila waived his right to counsel and knowingly and voluntarily provided a statement which said, in sum, that he killed Savoy at the request of Pannetta, and was paid for his work by Pannetta with drugs and cash and a forgiveness of his indebtedness.
On June 15, 1990 Detective Pierce and Detective William Cocks traveled to Sonia Correctional Facility near Rochester, New York, for the purpose of a further interview with Rocco Pannetta. At the facility, the detectives met with a Captain Poole, who performed the same function as Investigator Bezio did at Vila’s facility. Pierce, Cocks, and Poole met with Pannetta, and he was advised he did not have to speak to them and could terminate the meeting at any time. Pannetta agreed to speak to the detectives, and reiterated his decision of the previous March that he would speak without the presence of his attorney.
Detectives Pierce and Cocks confronted Pannetta with the statements of Johnson and Vila, which were in direct conflict to his version of the homicide. Pannetta then made several statements admitting among other things, that he did indeed owe Savoy a substantial sum of money and that he had an argumentative telephone conversation with her the day of her death. Pannetta had denied these allegations previously. He also said that he knew he had a big problem. After several more oral statements, the interview ended.
*34 On August 8, 1990, Pannetta, Vila and Johnson were indicted by a Nassau County Grand Jury.
CONCLUSION OF LAW
[After concluding that certain of the statements made by defendants prior to their incarceration were not subject to suppression, discussion of which has been omitted for purposes of publication, the court continued as follows:]
This court now turns its attention to the statements made by Vila and Pannetta to the detectives at their respective upstate prisons. It is the holding of the court that neither defendant was in the custody of the Nassau detectives and all such questioning occurred in a noncustodial manner and setting.
As stated earlier, custody is determined if a reasonable person, innocent of any crime, would have thought he was in custody if he was in the position of the defendant. (People v Yukl, 25 NY2d 585 [1969].) Although location is considered a major factor in determining if a setting is custodial, it is still only one consideration. (People v Williamson, 51 NY2d 801 [1980]; People v Palumbo, 49 NY2d 928 [1980].) Under the reasonable person standard, if there is no indication that the defendant was not free to leave, then this factor may be viewed as an indication that the questioning was under noncustodial circumstances. (People v Scott, 116 AD2d 755 [2d Dept 1986], lv denied 67 NY2d 889 [1986].)
In the case at bar, defendant Ricardo Vila was a sentenced prisoner in an upstate correctional facility. When the Nassau detectives went to see him, they were told by the State prison authorities that Vila was not obligated to speak with them, that Vila could terminate the interview at any time and that the detectives could not detain Vila for any reason. Vila was not handcuffed and State Investigator Bezio told Vila that he did not have to stay for the interview.
The court gives credence to the testimony of the two Nassau detectives, who stated Vila chose not to seek counsel and waived his right to an attorney knowingly and voluntarily and freely spoke to the detectives. Investigator Bezio testified that Vila said that he might want to speak to an attorney but, after he was told it would take an extra day to acquire an attorney, immediately resumed the interview. Assuming arguendo this actually happened, since this request was made in a noncustodial environment, that right to counsel could be *35 waived at any time and was so waived under these circumstances. (People v Davis, 75 NY2d 517 [1990].) In addition, it would seem that defendant’s alleged brief inquiry as to presence of an attorney fails to rise to the level of a bona fide request for counsel. (People v Johnson, 55 NY2d 931 [1982]; People v Rowell, 59 NY2d 727 [1983].)
For the same reasons as above, the court finds Pannetta’s correctional facility interview to be noncustodial as well.
Accordingly, the motion of the defendants, to suppress the evidence, is denied in its entirety.