■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT WARD, Appellant. [661 NYS2d 303] —Cardona, P. J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered January 4, 1996, upon a verdict convicting defendant of the crimes of robbery in the first degree

(two counts) and attempted robbery in the first degree (three counts).

On January 25, 1995, while serving a sentence on an unrelated charge, defendant signed a statement admitting his involvement in two armed robberies which occurred at Begie's Bar in the City of Binghamton, Broome County, and the Van Scoy Diamond Mine, a jewelry store, in the Town of Vestal, Broome County, on August 1, 1993 and August 2, 1993, respectively.

Defendant was indicted for robbery in the first degree (two counts) and attempted robbery in the first degree (three counts). After conducting a combined *Huntley-Wade* hearing, County Court denied defendant's motions to suppress his oral and written statements and evidence derived from a lineup. Following a jury trial, defendant was convicted of all charges and sentenced. Defendant appeals.

Defendant contends that his oral and written admissions were obtained in violation of his constitutional and statutory rights against self-incrimination. He asserts that he was subjected to custodial interrogation without administration of his *Miranda* rights (*see, Miranda v Arizona*, 384 US 436; *People v Rodney*, 85 NY2d 289) and that his admissions were obtained by police promises which were either coercive or created a substantial risk that he would falsely incriminate himself (*see,* CPL 60.45 [2] [b] [i]).

The Court of Appeals has refused "to adopt a per se rule that any questioning of an inmate in a correctional facility is custodial interrogation" (*People v Alls*, 83 NY2d 94, 100, *cert denied* 511 US 1090). Instead, the Court employs an "additional restraints" test which requires a showing that the circumstances of the detention and interrogation "would lead a prison inmate reasonably to believe that there has been a restriction on that person's freedom over and above that of ordinary confinement" (*id.*).

Our review of the circumstances surrounding defendant's interview by State Police Investigator Leslie Hyman and Vestal Town Police Sergeant Mark Johnson reveals that it was conducted in a room at Elmira Correctional Facility's reception center which the officers arranged so that defendant was seated closest to a door which was unlocked. Although a correction officer was stationed outside the door pursuant to facility policy, defendant was told at the start and during the interview that the interview was voluntary and he could leave at any time. Defendant acknowledged he understood that. During the interview, which lasted five hours, he had food and drink and

left once to use the bathroom. Given these circumstances, we find that defendant could not have reasonably believed that he was· subject to a restriction over and above that of ordinary confinement so as to be deemed "in custody", and, therefore, *Miranda* warnings were not necessary (*see, People v Vila*, 208 AD2d 781, 782, *lv denied* 85 NY2d 867; *see also, People v Ripic*, 228 AD2d 714, *lv denied* 89 NY2d 867).

Defendant also claims that his admissions should be suppressed on the ground that they were obtained based upon police promises that rendered them involuntary under either constitutional (*see*, CPL 60.45 [2] [b] [ii]; *Arizona v Fulminante*, 499 US 279) or statutory standards (*see*, CPL 60.45 [2] [b] [i]). During the interview, the officers told defendant that they were prepared to charge him, that they had evidence linking him to both robberies, but were giving him the opportunity to tell them about his involvement in the Van Scoy robbery and name the other person involved, in exchange for a deal authorized by the District Attorney that he would not pursue persistent offender treatment and would request a sentence of no more than 5 to 10 years consecutive to defendant's current sentence. Defendant was also told that if he did not cooperate he was risking a 25-year to life term after trial. The mere making of a promise will not automatically invalidate a confession under Federal law (*see, Bram v United States*, 168 US 532, 542-543; *United States v Reed*, 572 F2d 412, 426, *cert denied sub nom. Goldsmith v United States*, 439 US 913). Rather, the test is "whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear (the defendant's) will to resist and bring about confessions not freely self-determined' " (*United States v Ferrara*, 377 F2d 16, 17, *cert denied* 389 US 908, quoting *Rogers v Richmond*, 365 US 534, 544; *see also, United States v Reed, supra*, at 426).

As we have already noted, defendant was repeatedly advised that the interview was voluntary and he was free to go. No threats were uttered. Of significance also is the fact that defendant was no stranger to the criminal justice system. He had a history of serious crimes dating back 12 years and, at the time of the interview, was serving a sentence of eight years to life. Under all the circumstances, we conclude that defendant's will was not overborne and that his admissions were, therefore, voluntary. Nor do we find that the promises created a substantial risk that defendant might falsely incriminate himself (*see*, CPL 60.45 [2] [b] [i]; *compare, People v Keene*, 148 AD2d 977). Notably, when the officers brought up the District Attorney's

offer during the interview, defendant repeatedly commented that the sentence proposed meant nothing to him, as he was already incarcerated for eight years to life, and that such a promise could not induce him to admit to a robbery he did not commit.

We also find no merit in defendant's claim that the questioning should have ceased the moment he asked to speak to an attorney. About 45 minutes into the interview while Hyman was talking to the District Attorney on the phone in defendant's presence, defendant indicated that he wanted to discuss the matter with an attorney. Hyman indicated that he would then end the interview and would be approaching other participants in the robbery with the same offer. Defendant changed his mind and told Hyman that he did not want the attorney and wanted to continue the interview, which resumed. It is settled law that an individual who requests counsel in a noncustodial setting can waive or withdraw the request before proceedings commence (*see, People v Davis*, 75 NY2d 517, 522-523; *People v Glover*, 208 AD2d 475, *affd* 87 NY2d 838; *People v Panetta*, 152 Misc 2d 30, *affd sub nom. People v Vila,* 208 AD2d 781, *lv denied* 85 NY2d 867).

We next address defendant's contention that the pretrial lineup procedure utilized was unduly suggestive merely because the "opportunity was there" for the witnesses to confer with one another while waiting in the same room together to view the lineup. The record shows that upon arrival each witness read and signed an instruction sheet warning them not to discuss descriptions of suspects with other witnesses either before or after the lineup. Moreover, as each witness was individually escorted in to view the lineup, the same verbal warning was repeated. Additionally, there were police investigators in the waiting area during the entire time. In the absence of any actual evidence of conferral, we reject defendant's contention as pure speculation (*see, People v Stephens*, 143 AD2d 692, 695).

Finally, we find that defendant effectively abandoned the issue of his *Rosario* request for an investigator's lineup notes, first raised during the suppression hearing, by failing to renew the request at trial or seek a sanction for nonproduction (*see, People v Graves*, 85 NY2d 1024, 1027).

Mercure, White and Carpinello, JJ., concur. Ordered that the judgment is affirmed.