■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY D. WILLIAMS, Appellant. [695 NYS2d 150] —Peters, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered June 28, 1995, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and kidnapping in the first degree.

The facts underlying this proceeding stem from allegations that in January 1988, defendant kidnapped 18-year-old Karolyn Lonczak (hereinafter the victim) from a group home in the City of Cohoes, Albany County, where she was employed, and thereafter caused her death by strangulation and stabbing. Her body was found on March 10, 1988 near the Tomahannock Reservoir along County Route 117 in Rensselaer County.

Before the issuance of an indictment in February 1994 charging defendant with three counts of murder in the second degree and kidnapping in the first degree, he was arrested for burglary on March 4, 1988 in connection with the theft of a rocking chair. After being transported to the State Police barracks in Loudonville, Albany County, he was questioned by State Po-

lice Senior Investigator James Horton and Sergeant John Curry. Horton was unsuccessful in his attempt to convince defendant to take a polygraph test upon the disclosure that the subject matter of such test concerned various criminal and missing person investigations as well as attacks on women. On March 5, 1988, defendant was arraigned, assigned counsel who was yet to be identified and remanded to the Albany County Jail.

Horton visited defendant at the jail on March 7, 1988. Meeting in the visitation room, defendant was neither handcuffed nor shackled. Without providing *Miranda* warnings, Horton again asked defendant to submit to a polygraph test and, this time, specifically mentioned the victim who was then considered a missing person. Defendant again refused but agreed to further consider it.

On March 11, 1988, Curry accompanied Horton to the visitation room in the jail to meet with defendant. Again, no *Miranda* warnings were given. This time, Horton brought with him certain items taken from defendant at the time of his arrest which he sought returned. In addition, Horton brought a spider medallion which had been recovered from the scene where the victim was abducted. Defendant took all of the items except the medallion, contending that it was not his and that he had never seen it before.

Horton's final jail visit took place on March 13, 1988, when he again requested that defendant take a polygraph test. Although defendant agreed to talk with his attorney concerning that request, Horton ultimately contacted defendant's counsel to ask permission. Counsel advised him, in writing, that his client would not submit to such testing.

In 1989, defendant was convicted after trial of burglary, petit larceny and possession of stolen property. Upon his appeal, we reversed and remitted the matter to County Court for a new trial (*see, People v Williams*, 175 AD2d 338, *lv denied* 78 NY2d 1083). Before County Court, he entered a guilty plea to the burglary charge, was imprisoned and paroled shortly thereafter.

By January 1994, defendant was incarcerated in the Albany County Jail for having violated the terms of his parole. At about that time, Gary Evans was arrested. Agreeing to act as an informant for the State Police, Evans was placed in a cell adjacent to defendant from January 10, 1994 through February 12, 1994. During such time, defendant made a number of inculpatory statements to Evans concerning, *inter alia*, the victim. Following Evans' release, additional statements were

made to him when he visited defendant while wearing a recording device. Notably, defendant made further inculpatory statements to two other inmates, Willie Dabbs and Lamont Lee, who were not acting as police informants at the time that the statements were made.

At the suppression hearing wherein the aforementioned facts were disclosed, County Court, in a lengthy decision, denied suppression of all defendant's statements made to police authorities. The case proceeded to trial and defendant was ultimately convicted of two counts of murder in the second degree and kidnapping in the first degree, and thereafter sentenced to concurrent terms of imprisonment of 25 years to life on each count. He appeals.

Reviewing defendant's contention that certain of his statements were obtained in violation of his right to counsel, we reaffirm our holding in *People v Burdo* (224 AD2d 115, *affd* 91 NY2d 146). When an individual is in custody and the police are aware that counsel has been requested or retained, custodial interrogation must cease regardless of whether the questioning relates to the charge upon which counsel has been sought or provided (*see, id.*, at 117-118). As the Court of Appeals has held, "it is the role of defendant's attorney, not the State, to determine whether a particular matter will or will not touch upon the extant charge" (*People v Rogers*, 48 NY2d 167, 173). Applying *Burdo* to these facts, we find that although defendant's March 11, 1988 statement to Horton denying ownership of the medallion should have been suppressed, County Court's error was harmless since it tended to exculpate defendant. Given the overwhelming evidence of guilt presented at trial, we conclude that "there is no reasonable possibility that the error might have contributed to the conviction" (*People v Ayala*, 75 NY2d 422, 431, *cert denied* 513 US 888).

Regarding the statements made to Evans, we agree that no suppression was required. Defendant's incarceration was precipitated solely by a violation of the terms of his parole. He was not in custody on any charge whereby counsel was requested or on which counsel had appeared. Rejecting defendant's contention that counsel representing him in 1988 continued in this capacity through 1994 (*see, People v West*, 81 NY2d 370), we note that no evidence, not even his counsel's letter in April 1988 refusing his submission to a polygraph test, demonstrated that his prior attorney, or any other attorney, represented him on the proceeding which caused his incarceration in 1994.

We further find that *Miranda* warnings were not necessary

because defendant was not in "custody". Acknowledging that Evans was an agent for the State, it is well settled that his placement in a cell adjacent to defendant does not create an additional restriction on defendant's freedom over that of his ordinary confinement in a correctional facility (*see, People v Alls*, 83 NY2d 94, *cert denied* 511 US 1090; *People v Ward*, 241 AD2d 767, *lv denied* 91 NY2d 837). As to the statements made to other inmates—Dabbs and Lee—we agree that there exists no basis for suppression since they were not acting as agents for the State at the time such statements were made.*

We next address defendant's assertion that our determination in *People v Williams* (*supra*), finding no probable cause for the March 1988 arrest on the burglary charge, should have warranted the suppression of statements made by him while in custody on such charge. Contrary to defendant's contention, collateral estoppel on the issue of probable cause was not applicable. In order for the doctrine of collateral estoppel to apply in a criminal case, the Court of Appeals had held that there must be "identity of parties; identity of issues; a final and valid prior judgment; and a full and fair opportunity to litigate the prior determination" (*People v Aguilera*, 82 NY2d 23, 29-30). We do not agree that the doctrine of collateral estoppel should have precluded relitigation of the issue of probable cause since, in the burglary case, the People did not have the same incentive to call all possible witnesses and submit the quantum of proof required here (*see, People v Petralia*, 62 NY2d 47, 52, *cert denied* 469 US 852; *People v Jacobs*, 149 AD2d 112, 115, *lv denied* 74 NY2d 949). Finding further that the People presented sufficient evidence to uphold the arrest, no basis exists to undermine the determination rendered.

Having reviewed and rejected defendant's additional ascriptions of error, including the limitation of the cross-examination of an adverse witness and the claims of ineffective assistance of counsel, we affirm the judgment.

Mikoll, J. P., Mercure, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed.

---

* In fact, the police did not initiate contact with those inmates. Rather, they came forward on their own initiative.