[850 NYS2d 213]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES
H. VAN PATTEN, Appellant.

Third Department, December 27, 2007

**APPEARANCES OF COUNSEL**

*John A. Cirando,* Syracuse, for appellant.

*Andrew M. Cuomo, Attorney General,* New York City (*Benjamin E. Rosenberg* of counsel), for respondent.

**OPINION OF THE COURT**

MERCURE, J.

In July 2004, Donald Cerio, the District Attorney for Madison County, received a letter threatening his life and the lives of his wife and children, as well as the lives of several county employees, unless Cerio ceased any prosecutions involving violations of Penal Law article 490, which prohibits, among other things, making terroristic threats. The letter was signed "James" and included defendant's full name, prison identification number and the address of the detention facility where defendant was held on unrelated parole violation charges. The letter further indicated that the Madison County Courthouse and the County Department of Social Services would "look like the Olklahoma [*sic*] City federal" building. The sole relevant prosecution pending at the time involved defendant's biological father, Donald Jenner (*see People v Jenner*, 39 AD3d 1083 [2007], *lv denied* 9 NY3d 845 [2007]).

Defendant thereafter confessed that he wrote the letter to a police investigator, and fingerprints found on the letter were traceable to defendant. In addition, during a parole violation hearing, defendant admitted to threatening his parole officer and a deputy sheriff in the letter. He was subsequently charged in an indictment with one count of making a terroristic threat. Following a jury trial, he was found guilty as charged and sentenced, as a second felony offender, to the maximum term of seven years in prison. Defendant appeals and, inasmuch as we conclude that he was prejudiced by the improper admission of his statements to the police investigator, we now reverse.

■ Initially, we reject defendant's argument that the indictment must be dismissed because Penal Law § 490.20[1] is unconstitutionally vague as applied to him. As this Court recently held, "Penal Law § 490.20 survives the test for constitutional vagueness because the statutory language sufficiently apprises persons of ordinary intelligence of the type of conduct that is forbidden and provides law enforcement officials

---

1. Penal Law § 490.20 provides:
   "1. A person is guilty of making a terroristic threat when with intent to intimidate or coerce a civilian population, influence the policy of a unit of government by intimidation or coercion, or affect the conduct of a unit of government by murder, assassination or kidnapping, he or she threatens to commit or cause to be committed a specified offense and thereby causes a reasonable expectation or fear of the imminent commission of such offense.
   "2. It shall be no defense to a prosecution pursuant to this section that the defendant did not have the intent or capability of committing the specified offense or that the threat was not made to a person who was a subject thereof."

with clear standards for enforcement" (*People v Jenner*, 39 AD3d at 1085 [citations omitted]; *see generally People v Stuart*, 100 NY2d 412, 420-421 [2003]). In our view, the language of the statute is not vague as applied to defendant; that is, he cannot reasonably contend that in threatening Cerio, his family and numerous county employees with murder unless Cerio ceased prosecuting any cases involving a violation of Penal Law article 490, he did not intend to "influence the policy of a unit of government by intimidation or coercion[ ] or affect the conduct of a unit of government by murder, assassination or kidnapping" (Penal Law § 490.20 [1]; *see People v Jenner*, 39 AD3d at 1086). Furthermore, given defendant's concession that Cerio could have feared that defendant would have an accomplice pursue his threats in the letter to murder an extensive list of people "by the end of the year," he cannot reasonably claim that he did not "thereby cause[ ] a reasonable expectation or fear of the *imminent* commission of such offense" (Penal Law § 490.20 [1] [emphasis added]; *see People v Stuart*, 100 NY2d at 426-429).

 ■ We agree with defendant, however, that County Court (McDermott, J.) erred in denying his motion to suppress his statements to police investigator Mark Nell on the ground that those statements were elicited in violation of defendant's *Miranda* rights. When "the circumstances of the detention and interrogation of a prison inmate . . . entail added constraint that would lead a prison inmate reasonably to believe that there has been a restriction on that person's freedom over and above that of ordinary confinement in a correctional facility, *Miranda* warnings are necessary" (*People v Alls*, 83 NY2d 94, 100 [1993], *cert denied* 511 US 1090 [1994]; *see People v Ward*, 241 AD2d 767, 768 [1997], *lv denied* 91 NY2d 837 [1997]). Here, the interrogation of defendant at the detention facility—which took place in a classroom with correction officers standing outside the door while defendant was not permitted to leave on his own—was custodial in nature. Thus, as the People concede, Nell was obligated to inform defendant of his rights (*see People v Alls*, 83 NY2d at 102-103). The People argue, however, that Nell's testimony at the suppression hearing refutes defendant's assertion that he was subject to interrogation before he was read his *Miranda* rights. Rather, they maintain that when Nell first met defendant and was in the process of explaining the purpose of his visit, defendant spontaneously confessed to writing the letter.

In our view, Nell's explanation to defendant regarding why he wanted to speak with defendant was the functional equivalent of interrogation and, thus, County Court's determination that the statement was spontaneous is not supported by the record (*see People v Vaughn*, 275 AD2d 484, 487 [2000], *lv denied* 96 NY2d 788 [2001]). In determining whether police conduct constitutes interrogation, the question is not what "the subjective intent of the police [was], but . . . whether an objective observer with the same knowledge concerning the suspect as the police had would conclude that the remark or conduct of the police was reasonably likely to elicit a response" (*People v Ferro*, 63 NY2d 316, 319 [1984], *cert denied* 472 US 1007 [1985]; *see People v Paulman*, 5 NY3d 122, 129 [2005]). Nell testified during the suppression hearing that in explaining his purpose prior to administering *Miranda* warnings, he

> "[t]old [defendant] I was basically trying to find out if he had any knowledge of this letter being out there. If he was aware of it. The merit of it. If it was something that should be taken serious. More or less advising him that I was looking into possibly who had written the letter . . .
>
> "I had also mentioned something about the possibility of even if someone else had written it and put his name on it. And he says, I wrote it."

This testimony, which was fully credited by County Court, establishes that defendant's statement that he "wrote it" was not spontaneous, but induced by Nell's lengthy description of the questions he intended to ask defendant regarding the letter, and that Nell should have known that his statements were likely to elicit an incriminating response (*see People v Paulman*, 5 NY3d at 129; *People v Ferro*, 63 NY2d at 323-324; *see also People v Lanahan*, 55 NY2d 711, 713-714 [1981]; *cf. People v Wearen*, 19 AD3d 1133, 1134 [2005], *lv denied* 5 NY3d 834 [2005]).

Moreover, where a statement obtained in violation of a defendant's *Miranda* rights gives rise to a subsequent statement after the warnings are administered, "[t]he later statement is . . . admissible [only] if there is a definite, pronounced break in questioning so as to provide the defendant with sufficient time to reflect upon the situation and return him or her 'to the status of one who is not under the influence of questioning' " (*People v Durrin*, 32 AD3d 665, 668 [2006] [citations omitted]; *see People v Paulman*, 5 NY3d at 130-131). Nell testified that after defendant admitted writing the letter, he immediately

gave defendant the *Miranda* warnings, briefly took some pedigree information and then continued asking about the letter. According to Nell, defendant stated that he wrote the letter in response to Cerio's prosecution of his father, explaining that the individuals named in the letter "ruined my families' [*sic*] lives so I'm going to ruin their lives." Defendant also insisted that Jenner was not involved in writing the letter and that the persons in the letter should take him seriously because he had the financial means to carry out his threats. The entire interview took place over the course of approximately 30 minutes in a single location, without any break in questioning, and was, as Nell testified, "just one continuous process." Thus, defendant's warned statements were obtained as part of a "single continuous chain of events" and must also be suppressed (*People v Paulman*, 5 NY3d at 130; *see People v Bethea*, 67 NY2d 364, 368 [1986]; *People v Hall*, 41 AD3d 880, 883 [2007], *lv denied* 9 NY3d 876 [2007]; *People v Durrin*, 32 AD3d at 668).

Finally, it cannot be said that the improper admission of defendant's statements during trial, an error of constitutional dimension, was harmless beyond a reasonable doubt. At trial, Jenner testified that he wrote the letter himself and that defendant, who was housed in the same wing of the detention facility as Jenner, had nothing to do with the letter beyond putting it in an envelope and mailing it at Jenner's behest. While defendant admitted during his parole revocation hearing that he threatened the safety of his parole officer and a deputy sheriff in the letter, he presented evidence that he was on Lithium and Paxil at the time of that hearing.[2] Furthermore, in their closing statement, the People highlighted defendant's confession to Nell in urging the jury to reject Jenner's testimony, deeming the evidence critical. Indeed, the significance of Nell's trial testimony regarding defendant's confession was revealed by the jury's request for a read-back of that testimony.

We note that "however overwhelming may be the quantum and nature of other proof, the error is not harmless under the . . . test [for errors of constitutional dimension] if 'there is a reasonable possibility that the . . . [error] might have contributed to the conviction' " (*People v Crimmins*, 36 NY2d 230, 240-

---

2. The admission consisted of defendant's counsel entering pleas of guilty to "Charge Number 2," "Charge Number 3" and "Charge Number 4," which were not otherwise described during the hearing, and defendant's response of "Yes, sir" to the administrative law judge's inquiry, "Is that correct, Mr. Van-Patten, that you wish to enter a plea of guilty to Charges 2, 3, and 4?"

241 [1975] [citations omitted]). As explained by the Court of Appeals,

> "[u]nder our system of justice a jury is not commanded to return a verdict of guilty even in the face of apparently conclusive proof of the defendant's guilt. Similarly it may and often does exercise a positive sense of moderating mercy. Further inquiry must accordingly be made by the appellate court as to whether, notwithstanding the overwhelming proof of the defendant's guilt, the error infected or tainted the verdict" (*id.* at 242).

Under the circumstances of this case, there is a reasonable possibility that the admission of defendant's statements to Nell contributed to his conviction. Accordingly, the error was not harmless and defendant is entitled to a new trial (*see People v Durrin,* 32 AD3d at 668; *People v Hilliard,* 20 AD3d 674, 679 [2005], *lv denied* 5 NY3d 853 [2005]; *People v Hunt,* 18 AD3d 891, 892-893 [2005]).

In light of our decision, defendant's remaining arguments are rendered academic.

Cardona, P.J., Crew III, Carpinello and Lahtinen, JJ., concur.

Ordered that the judgment is reversed, on the law, motion to suppress granted, and matter remitted to the County Court of Madison County for further proceedings not inconsistent with this Court's decision.