[861 NYS2d 168]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KRIS-
TERFER PASSINO, Appellant.

Third Department, July 3, 2008

APPEARANCES OF COUNSEL

*Mary Elizabeth Coreno*, Saratoga Springs, for appellant.

*Kevin C. Kortright, District Attorney*, Fort Edward (*Michael R. Stern* of counsel), for respondent.

## OPINION OF THE COURT

KAVANAGH, J.

Defendant, a prison inmate, was charged with placing a false bomb or hazardous substance in the first and second degrees. The charges related to defendant sending two letters—one to then-Governor George Pataki and another to the Superintendent of Great Meadow Correctional Facility in Washington County—which contained a note with the word "anthrax" and white powder, which was later determined to be talc. The return address on the envelopes containing the letters listed the name of defendant's former cellmate who, upon being questioned by an investigator from the Inspector General's office, denied any involvement with the letters and implicated defendant. The investigator questioned defendant at his correctional facility and defendant provided an oral statement, which was later reduced to writing, admitting that he sent the letters. Defendant moved to suppress the statement and, after a *Huntley* hearing, County Court (Berke, J.) denied his motion to suppress. Defendant subsequently pleaded guilty to placing a false bomb or hazardous substance in the second degree and County Court (Pritzker, J.) sentenced defendant, as a second felony offender, to a three-year prison term and three years of postrelease supervision. Defendant now appeals.

Defendant claims that the statement should have been suppressed because the investigator questioned him during a custodial interrogation without giving him *Miranda* warnings. We disagree. The evidence received at the hearing did not establish that defendant was in custody at the time that he was interviewed by the investigator and made the statement (*see People v Dodt*, 61 NY2d 408, 415 [1984]; *People v Love*, 57 NY2d 998, 999 [1982]). At the *Huntley* hearing, the investigator testified that, at the outset of his interview with defendant, he advised defendant of the purpose of the inquiry, told him that he did not have to answer any questions and was free to leave the visitors' room at any time. Defendant was not restrained and no one else was present in the room during the interview. In his own testimony, defendant never claimed that he was forced to participate or was in any way compelled to answer any of the

investigator's questions. He simply stated that he had no recollection of ever being interviewed by an investigator regarding letters alleged to have contained anthrax that were sent to Governor Pataki, had no recollection of the investigator who claims to have conducted the interview, and claimed that he never made the statement attributed to him. County Court found the investigator's testimony credible and that testimony, if believed, provided an ample basis for its conclusion that defendant's statement was not taken during a custodial interrogation (*see People v Alls*, 83 NY2d 94, 100 [1993], *cert denied* 511 US 1090 [1994]).

We do not agree that *People v Alls* (*supra*) requires a different result. In *Alls*, the defendant, an inmate in a prison facility, was taken from his cell by his interrogator to the basement area of the facility where—without being advised of his *Miranda* warnings—the interview took place. No evidence was presented that, at any time while being interviewed, the defendant was advised that he did not have to participate in the interview or that he was free to leave (*id.*).

These facts stand in stark contrast to the evidence introduced in this action, which established that defendant's first contact with the investigator who conducted the interview was when he arrived at the visitors' room of the facility. Defendant was never restrained or handcuffed, and no one other than the investigator was present while the interview took place. Defendant was immediately advised that he did not have to answer any questions and could leave the interview at any time (*see People v Hope*, 284 AD2d 560, 562 [2001]; *People v Ward*, 241 AD2d 767, 768 [1997], *lv denied* 91 NY2d 837 [1997]). While there is no evidence in the record as to what transpired prior to defendant arriving for the interview, no evidence has been presented that defendant was threatened or coerced or was compelled in any way to participate in the interview. In fact, in his own testimony, defendant never made such a claim or in any way alleged that anything transpired prior to the interview that would contradict County Court's conclusion that he voluntarily participated in it. Simply put, nothing has been presented that would support the conclusion that when defendant arrived at the visitors' room for the interview, anything occurred that involved any "added constraint that would lead a prison inmate reasonably to believe that there has been a restriction on that person's freedom over and above that of ordinary confinement in a correctional facility" (*People v Alls*, 83 NY2d at 100).

Finally, nowhere in *People v Alls* (*supra*) is there support for the dissent's conclusion that "the circumstances under which defendant was brought to the interview room—i.e., prior to the actual interrogation—were, *as a matter of law*, necessarily put in issue by defendant's motion, and were part of the People's required showing" (emphasis added). In our view, *Alls* does not support such a conclusion and, in fact, stands for the proposition that simply because an inmate is confined to a correctional facility does not mean that he or she is in custody when questioned by authorities. Here, the People established that when questioned, defendant was not in custody and there is nothing in the record that would establish otherwise.

We similarly find unavailing defendant's claim that the statement was not voluntarily given, as the totality of the circumstances surrounding the taking of the statement establishes otherwise (*see People v Leonard*, 59 AD2d 1, 12-13 [1977]). Given the deference traditionally accorded County Court's determinations on issues of credibility that are, as here, supported by the record (*see People v Ward*, 42 AD3d 579, 580 [2007], *lv denied* 9 NY3d 883 [2007]; *People v Russell*, 41 AD3d 1094, 1096 [2007]; *People v Bermudez*, 31 AD3d 968, 968 [2006], *lv denied* 8 NY3d 944 [2007]), its decision to deny defendant's motion to suppress is affirmed.

Spain, J. (dissenting). Because I conclude that the People failed to satisfy their burden of demonstrating at the *Huntley* hearing the legality of the law enforcement conduct—i.e., that defendant was not subject to custodial interrogation requiring *Miranda* warnings when he was questioned while incarcerated—I respectfully dissent.

At the brief *Huntley* hearing, the investigator testified that he first spoke with the inmate listed as the addressee of the letters in issue, whose handwriting "ruled him out." After that inmate implicated defendant, defendant was brought to the facility "visiting room" (which is not described in the record), under unknown circumstances, where the investigator questioned him for about one hour, with no other witnesses. While defendant was restrained and never asked for an attorney, to take a break, for food or drink, or to end the questioning, at no point were *Miranda* warnings provided. The investigator explained to defendant at the outset that he was "working on a case involving the Governor receiving a letter and . . . wanted to know if he had any information regarding the letter," and that "at any time he could leave." No testimony of any kind was offered

concerning the circumstances under which defendant was brought to the interview room. While defendant did testify, he did not recall meeting the investigator or signing the written statement, but conceded the signature on it "looked like" his own.

On appeal, defendant argues that his statements should have been suppressed because they were the product of a custodial interrogation without the benefit of *Miranda* warnings.[1] In *People v Alls* (83 NY2d 94, 100 [1993], *cert denied* 511 US 1090 [1994]), a divided Court of Appeals declined to adopt a per se rule that any questioning of an inmate in a correctional facility is a custodial interrogation which must be preceded by *Miranda* warnings; instead, the Court adopted an "added constraint" test in which all of the "circumstances of the detention and interrogation" are evaluated to determine if they "would lead a prison inmate reasonably to believe that there has been a restriction on that person's freedom over and above that of ordinary confinement in a correctional facility" (*id.* at 100; *see People v Van Patten*, 48 AD3d 30, 33 [2007], *lv denied* 10 NY3d 845 [2008]; *People v Ward*, 241 AD2d 767, 768 [1997], *lv denied* 91 NY2d 837 [1997]; *see also People v Brown*, 49 AD3d 1345, 1346 [2008]). Notably, the United States Supreme Court has left open the question of whether the bare fact of an inmate's custody requires *Miranda* warnings every time an inmate is knowingly interrogated by law enforcement officials (*see Illinois v Perkins*, 496 US 292, 299 [1990] [*Miranda* warnings not required where inmate is unaware he is speaking with undercover officer posing as inmate because there is no danger of coercion]; *see also Bradley v Ohio*, 497 US 1011, 1011-1012 [1990] [Marshall, J., dissenting from denial of certiorari; urging review of issue of what constitutes custody in prison setting for purposes of *Miranda* requirements]; *cf. Mathis v United States*, 391 US 1, 4-5 [1968] [Internal Revenue Service agent questioning of inmate required *Miranda* warnings]).

The People, of course, bore the initial burden of establishing the legality of the police conduct in the first instance and, only if established, would the burden of persuasion on the motion pass on to defendant (*see People v Dodt*, 61 NY2d 408, 415

---

1. Defendant's appellate challenge is preserved for our review (*see* CPL 470.05 [2]) because County Court "in response to a protest . . . expressly decided the question raised on appeal" (CPL 470.05 [2]; *see People v Edwards*, 95 NY2d 486, 491 n 2 [2000]; *accord People v Prado*, 4 NY3d 725, 726 [2004]; *People v Baptiste*, 51 AD3d 184, 186 n 2 [2008]).

[1984]; *People v Love*, 57 NY2d 998, 999 [1982]; *People v Di Stefano*, 38 NY2d 640, 652 [1976]; *People v Gates*, 153 AD2d 68, 72 [1989], *lv denied* 75 NY2d 966 [1990]). Here, in my view, the People failed to establish at the suppression hearing a sufficiently complete picture of the circumstances of defendant's detention and interrogation, given the absence of any evidence whatsoever concerning the circumstances under which defendant was taken—and by whom—to the visiting or interview room to be questioned (*cf. People v Gause*, 50 AD3d 1392 [2008]; *People v Brown*, 49 AD3d at 1346; *People v Van Patten*, 48 AD3d at 33; *People v Hope*, 284 AD2d 560 [2001]). No testimony was adduced concerning who transported defendant, what he was told, whether he was actually given a choice to go to the interview, or of the relative location of the interview room in the facility or presence of correction officers outside (*see People v Alls*, 83 NY2d at 102; *People v Van Patten*, 48 AD3d at 33; *People v Hope*, 284 AD2d at 561-562).

Under the clear import of *People v Alls* (*supra*), the circumstances under which defendant was brought to the interview room—i.e., prior to the actual interrogation—were, as a matter of law, necessarily put in issue by defendant's motion, and were part of the People's required showing[2] (*see People v Alls*, 83 NY2d at 101-102). The Court held that where the defendant was taken by a correction officer to an interview room and no testimony was adduced that the defendant mutually agreed to go, "[t]he People could only have *dispelled the inference of defendant's compulsion* to accompany [the officer] by evidence that defendant 'was actually offered a choice' " (*id.* at 102 [emphasis added], quoting *People v Dodt*, 61 NY2d at 417). To be sure, the investigator's testimony, credited by County Court (Berke, J.) and to which we must accord deference, established that once defendant arrived in the room, he was told that he was free to leave and no coercive tactics were employed; this, however, is neither determinative nor adequate.

---

**2.** Even the dissenting judges in *People v Alls* (83 NY2d at 121-122 [Simons, J., dissenting])—who concluded that the danger of coercion test in *Illinois v Perkins* (*supra*) should apply and that it was the defendant who bore the burden of proof—recognized that the circumstances surrounding the correction officer's movement of the defendant to the interview area were relevant in determining whether *Miranda* warnings are required. The dissent also recognized that "gaps in the record are to be construed against the party with the burden of proof" (*People v Alls*, 83 NY2d at 115).

First, *People v Alls* (*supra*) requires consideration not merely of the circumstances of the interrogation itself—i.e., the questioning in the interview room—but also of the "circumstances of the detention" (*id.* at 100), which necessarily includes inquiry into the facts surrounding the movement of an inmate defendant.[3] Moreover, "additional, specific *coercive* official conduct" is *not* "a sine qua non for application of the additional restraints test"; that is, custodial interrogation for *Miranda* purposes is not limited to "questioning in a coercive atmosphere of detention" (*People v Alls*, 83 NY2d at 101). Rather, "*Miranda presumes* that custody by law enforcement authorities is inherently coercive, even in a nonthreatening atmosphere" (*id.*). Further, "[t]he taking of a suspect under apparent compulsion by a law enforcement official to a place of isolation has repeatedly been held to constitute custodial restraint" (*id.* at 102-103). Indeed, the People never dispelled the apparent compulsion under which all inmates operate.

The record here is simply insufficient to determine whether defendant went to this interview by compulsion (*see* 7 NYCRR 270.2 [B] [10] [iii]; *see also* 7 NYCRR 270.2 [B] [7] [i]) or under "circumstances which could have led [him] reasonably to believe he was free to decline" (*People v Alls*, 83 NY2d at 102; *cf. People v Georgison*, 299 AD2d 176, 176-177 [2002], *lv denied* 99 NY2d 614 [2003])—such as being " 'actually offered a choice' " (*People v Alls*, 83 NY2d at 102, quoting *People v Dodt*, 61 NY2d at 417).

Indeed, the added constraint test adopted in *People v Alls* (83 NY2d at 100) was derived from United States Circuit Court of Appeals decisions such as *Cervantes v Walker* (589 F2d 424, 427-429 [9th Cir 1978]), which have recognized that the totality of circumstances—including "the language used *to summon* the individual"—must be examined to determine whether an inmate who is interrogated is in custody for *Miranda* purposes (*id.* at

---

**3.** The fact that the defendant in *Alls* was interrogated by a correction officer while defendant here was questioned by a different type of law enforcement officer working for the Department of Correctional Services is certainly not a determinative distinction rendering the *Alls* analysis inapplicable (*see People v Van Patten*, 48 AD3d at 33-34 [*Alls* applied where defendant inmate questioned by a police investigator]; *People v Ward*, 241 AD2d at 768 [*Alls* applied where inmate questioned by State Police investigator and town police at correction facility]; *see also Illinois v Perkins*, 496 US at 296 [inmate questioned by undercover posing as inmate]; *Mathis v United States*, 391 US at 2-3 [inmate statement to Internal Revenue Service agent]; *United States v Rodriguez*, 356 F3d 254 [2d Cir 2004] [interview of inmate by immigration agent]).

428 [emphasis added]; *see Lindsey v United States*, 911 A2d 824, 831-833, 831 n 3 [DC Cir 2006], *cert denied* 552 US —, 128 S Ct 804 [2007]; *United States v Menzer*, 29 F3d 1223, 1231-1232 [7th Cir 1994], *cert denied* 513 US 1002 [1994] [and cases cited therein]). The Court in *People v Alls* (83 NY2d at 101-102) specifically criticized the trial court's narrow, limited focus on the interview room conditions alone and its reliance upon the "entirely speculative factual assumption, for which there is no evidentiary support in the record" (*id.* at 101), that defendant agreed to go. Here, since the People bore the burden to elicit such testimony, defendant's inability to recall the interview or the circumstances under which it occurred is not determinative, as it is essentially indistinguishable from cases in which a defendant does not testify; it did not operate to relieve the People of that burden. Thus, I believe that the People—by limiting their proof to the circumstances *in the interview room*—did not tender facts from which it could be concluded that defendant *went* to (rather than stayed in) the interview voluntarily and was not already acting under the compulsion of a confined inmate when he arrived at and remained in the interview room.

By parity of reasoning, the voluntariness of defendant's statements—a question of fact requiring an evaluation of the totality of the circumstances—was not established at the hearing (*see People v Barton*, 13 AD3d 721, 722 [2004], *lv denied* 5 NY3d 785 [2005]; *cf. People v Cole*, 24 AD3d 1021, 1023 [2005], *lv denied* 6 NY3d 832 [2006]). Given defendant's guilty plea following the denial of his motion to suppress, I cannot conclude that the error in denying suppression of defendant's statement was harmless (*see People v Hope*, 284 AD2d at 562).

Addressing the appropriate corrective action, the People had a full opportunity and incentive to present all available evidence to establish that the interview of defendant was noncustodial and not made under "added constraint" under *People v Alls* (83 NY2d at 100; *see People v Havelka*, 45 NY2d 636, 642-644 [1978]), and that defendant's statements were voluntary (*see People v Crandall*, 69 NY2d 459, 464-467 [1987]). Their failure to do so is in no way attributable to any incorrect ruling or limitation in proof by the suppression court, and "there is no justification for providing a second chance to the People where they tried once and failed without the interposition of judicial error" (*id.* at 464; *see People v Malinsky*, 15 NY2d 86, 95-96 [1965]; *cf. People v Serrano*, 93 NY2d 73, 78-79 [1999]; *People v Alls*, 83 NY2d at 101-102

[remittal allowed because trial court employed incorrect standards]; *People v Dodt*, 61 NY2d at 415-417; *People v Payton*, 51 NY2d 169, 176-178 [1980]; *People v Alvarez*, 51 AD3d 167 [2008]). Thus, I would suppress defendant's statements and reverse his judgment of conviction (*see People v Hope*, 284 AD2d at 562).

CARDONA, P.J., MERCURE and LAHTINEN, JJ., concur with KAVANAGH, J.; SPAIN, J., dissents in a separate opinion.

Ordered that the judgment is affirmed.