People v Harrison (2018 NY Slip Op 04387)





People v Harrison


2018 NY Slip Op 04387


Decided on June 14, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 14, 2018

107309

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
DONNELL HARRISON, Appellant.

Calendar Date: April 30, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Pritzker, JJ.


Salvatore C. Adamo, Albany, for appellant.
Matthew VanHouten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.


Devine, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Tompkins County (Cassidy, J.), rendered July 16, 2014, upon a verdict convicting defendant of the crimes of assault in the first degree and criminal possession of a weapon in the second degree.
Defendant was charged in an indictment with various offenses after he allegedly shot two men, Matthew Dewey and Cory Heffron, in the belief that they had stolen from him. Following a jury trial, he was convicted of assault in the first degree pertaining to Dewey and criminal possession of a weapon in the second degree. County Court sentenced defendant, as a second violent felony offender, to an aggregate prison term of 16 years to be followed by postrelease supervision of five years. He appeals, and we now affirm.
Defendant's challenge to the legal sufficiency of the evidence is unpreserved "inasmuch as his counsel made only a general motion to dismiss at the close of the People's case-in-chief" (People v Hahn, 159 AD3d 1062, 1063 [2018]; see People v Rosario, 157 AD3d 988, 989 [2018]). We will nevertheless evaluate, within the context of our weight of the evidence review, whether the elements of the offenses were proven beyond a reasonable doubt (see People v Kancharla, 23 NY3d 294, 303 [2014]; People v Danielson, 9 NY3d 342, 349 [2007]; People v Hahn, 159 AD3d at 1063).
In that regard, defendant reported that someone had stolen money from his residence, and a deputy sheriff testified that he responded to that call and spoke with defendant on April 24, 2013. Defendant shot Dewey and Heffron six days later. The two men gave consistent testimony in which they described their transactional relationship with defendant in the months [*2]leading up to the shooting, purchasing marihuana from him or exchanging it for automotive repairs they performed at his residence. Defendant arrived at their residence on the afternoon of April 30, 2013 and was invited in by Dewey to look at some electronic equipment they had for sale [FN1]. The equipment was in Dewey's bedroom, as was Heffron. Defendant entered the bedroom with Dewey, at which point he accused Dewey and Heffron of stealing marihuana and money from his residence and demanded to know "where his stuff was." Dewey and Heffron denied having stolen from defendant and continued to do so after he produced a pistol and demanded answers at gunpoint, prompting defendant to shoot them both. The first degree assault count was related to Dewey, who was shot in the head and sustained injuries that included a shattered jaw and permanent deafness in his left ear. Investigators recovered two expended shells from the residence.
The foregoing proof was sufficient to permit the finding that defendant possessed a loaded firearm with unlawful intent, aiming to inflict serious physical injury and succeeding with regard to Dewey (see Penal Law §§ 120.10 [1]; 265.03 [1] [b]; People v Mathews, 134 AD3d 1248, 1250 [2015]; People v Heyliger, 126 AD3d 1117, 1118-1119 [2015], lv denied 25 NY3d 1165 [2015]). Assuming for the sake of argument that acquittal was a reasonable possibility so as to warrant a weight of the evidence analysis (see People v Danielson, 9 NY3d at 348), the jury credited the descriptions of the gunplay provided by Dewey and Heffron despite defendant's efforts to undermine the pair's testimony. Deferring to that credibility assessment, we cannot say that the verdict was against the weight of the evidence (see People v Mathews, 134 AD3d at 1249-1250; People v Lanier, 130 AD3d 1310, 1311 [2015], lv denied 26 NY3d 1009 [2015]).
Defendant further challenges several of the pretrial rulings, the first of which rejected his motion to dismiss the indictment upon the ground that the People did not give notice of the pending grand jury proceedings so as to afford him "a reasonable time to exercise his right to appear as a witness" there (CPL 190.50 [5] [a]). The People responded by averring that the felony complaint against defendant was disposed of in a local criminal court following a preliminary hearing, and the matter held over for the action of a grand jury. Accordingly, as the felony complaint was disposed of with "defendant [being] held for grand jury action[,] . . . he was no longer subject to an 'undisposed of felony complaint' in a local criminal court so as to entitle him to notice of grand jury proceedings under CPL 190.50 (5) (a)" (People v Carlton, 120 AD3d 1443, 1444 [2014], lv denied 25 NY3d 1070 [2015]; see People v Boodrow, 42 AD3d 582, 584 [2007]; People v Hodges, 246 AD2d 824, 825 [1998]). County Court (Rossiter, J.) properly rejected defendant's motion on this basis.
Turning to defendant's application to suppress various evidence, investigators deployed photo arrays to obtain pretrial identifications of defendant from Dewey and Heffron. The suppression hearing included testimony from those investigators to the effect that Dewey and Heffron were both lucid despite their injuries and that proper identification procedures were [*3]employed, thereby "satisf[ying] [the People's] initial burden to establish that the police conduct was reasonable and that their procedure was not unduly suggestive" (People v Quintana, 159 AD3d 1122, 1127 [2018]; see People v Chipp, 75 NY2d 327, 335-336 [1990], cert denied ___ US ___, 498 S Ct 833 [1990]). Moreover, after reviewing the photo array used by both officers, "we find no merit in defendant's claim that the identification was unduly suggestive" (People v Smith, 157 AD3d 978, 979 [2018]). County Court (Cassidy, J.) was accordingly right to refuse to suppress the identifications.
Defendant also sought to suppress statements made in the course of his interview with an investigator, conducted while he was jailed and awaiting trial on the present offenses, including his belief that Dewey and Heffron were the people who had burgled his residence a week before the shooting. The People did not dispute that defendant was in custody at the time of the interview, was not administered Miranda warnings and did not have counsel present. The People instead argued that the statements were admissible as spontaneously made outside of the context of custodial interrogation, which depends upon whether they were "the product of 'express questioning or its functional equivalent'" (People v Bryant, 59 NY2d 786, 788 [1983], quoting Rhode Island v Innis, 446 US 291, 300-301 [1980]; accord People v George, 127 AD3d 1496, 1497 [2015]). The interview resulted from defendant's repeated requests to speak to an investigator regarding his April 24, 2013 report of having been the victim of a burglary. The investigator did not raise the issue of the shooting during the interview, but defendant made the damaging admission in response to the investigator asking if he had any suspects in mind regarding the burglary. The investigator testified that he did not, at that point, believe there was any connection between the reported burglary and the later shooting for which defendant had been charged.
County Court accepted that the investigator believed the burglary "to be a separate incident altogether" from the shooting, and we "[a]ccord[] deference to [the] suppression court's factual findings and credibility determinations" (People v Vandebogart, 158 AD3d 976, 978 [2018])[FN2]. That being said, the investigator admitted that he had supervised the investigation into the shooting and knew, at the time of the interview, that it was drug related, circumstances leaving no doubt that he "should have known" when he posed the question regarding who defendant suspected to be the thieves that he "was 'reasonably likely to evoke an incriminating response'" (People v Huffman, 61 NY2d 795, 797 [1984] [emphasis added], quoting Rhode Island v Ennis, 446 US at 301; see People v Van Patten, 48 AD3d 30, 34 [2007], lv denied 10 NY3d 845 [2008]; People v Ackerman, 162 AD2d 793, 794 [1990]; compare People v Anderson, 94 AD3d 1010, 1011 [2012], lv denied 19 NY3d 956 [2012]; People v Igneri, 152 AD2d 638, 639 [1989], lvs denied 74 NY2d 897, 899, 900 [1989]). As such, defendant's naming of Dewey and Heffron was the product of custodial interrogation and should have been suppressed. Nevertheless, in light of the trial evidence establishing that defendant believed someone had stolen from him and the testimony of Dewey and Heffron identifying this grievance as what motivated defendant to shoot them, there is no reasonable possibility that the outcome of the trial was affected by this statement's erroneous admission (see People v Adams, 53 NY2d 241, 252 [1981]; cf. People v Van Patten, 48 AD3d at 35-36). The error was therefore harmless.
As for the trial itself, defendant argues that County Court should not have permitted the People to introduce evidence that he was a potential or actual supplier of marihuana, that he indicated that Dewey and Heffron had stolen from him before shooting them, and that he committed the uncharged act of shooting Heffron. Our review leads us to agree with County Court that this proof "provided necessary background information, established defendant's motive and intent to commit the assault" upon Dewey (People v Ford, 156 AD3d 1242, 1245 [2017], lv denied 31 NY3d 1013 [2018]; see People v Till, 87 NY2d 835, 837 [1995]; People v Ramsaran, 154 AD3d 1051, 1054 [2017], lv denied 30 NY3d 1063 [2017]) and was, in large part, needed "to complete the narrative of the episode" (People v Murphy, 235 AD2d 933, 935 [1997], lv denied 90 NY2d 896 [1997]; see People v McCommons, 143 AD3d 1150, 1154 [2016], lvs denied 29 NY3d 999, 1001 [2017]). It was also more probative than prejudicial and, as such, County Court's Molineux ruling was not an abuse of discretion (see People v Ford, 156 AD3d at 1245; People v McCommons, 143 AD3d at 1153).
Defendant next contends that he received the ineffective assistance of counsel, primarily asserting that defense counsel took inadequate action to address a situation during voir dire when two prospective jurors were supposedly discussing gun rights amongst themselves. The record establishes that defense counsel declined to take further action after investigating the matter, however, and there is nothing to suggest that this deliberate inaction lacked a legitimate basis. Defendant complains of counsel's performance in other respects as well but, suffice it to say, "the evidence, the law, and the circumstances [of this case], viewed in totality and as of the time of the representation, reveal that [his] attorney provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v King, 27 NY3d 147, 158 [2016]).
Defendant's remaining challenges do not demand extended discussion. County Court began to articulate that defendant's legs would remain shackled during trial because of his behavior while jailed and, as defense counsel cut off that explanation and stated that it was "fine," defendant will not now be heard to complain that the incomplete explanation was inadequate (see People v Griggs, 27 NY3d 602, 606 [2016]). His attack upon County Court's Sandoval compromise is likewise unpreserved and, in any case, we perceive no abuse of discretion within the compromise (see People v Jackson, 29 NY3d 18, 23 [2017]; People v Pittman, 160 AD3d 1130, 1130 [2018]). Defendant chose to return to jail rather than sit through one day of his trial and, contrary to his contention, County Court adequately advised him "of the nature of the right to be present at trial and the consequences for failure to appear" before he did so (People v Parker, 57 NY2d 136, 141 [1982]; see People v Carter, 50 AD3d 1318, 1319-1320 [2008], lv denied 10 NY3d 957 [2008]). Lastly, defendant's contention that he was improperly sentenced as a second violent felony offender is unpreserved given his failure to object at sentencing (see People v Pittman, 160 AD3d at 1131), and the aggregate sentence itself was not harsh or excessive.
McCarthy, J.P., Lynch, Clark and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant arrived around the same time as the departure of a woman who was expected to, but did not, testify as part of the People's case. The People set forth their diligent, unsuccessful efforts to secure the woman's presence by subpoena, and County Court did not abuse its discretion in finding her unavailable and rejecting defendant's request for a missing witness charge (see People v Henriquez, 147 AD3d 706, 707 [2017], lv denied 29 NY3d 1080 [2017]; People v Womack, 143 AD3d 1171, 1174 [2016], lv denied 28 NY3d 1151 [2017]).

Footnote 2: County Court suppressed the contents of the interview beyond the point that defendant expressed his belief that Dewey and Heffron had stolen from him, finding it "nearly inevitable" that further questioning would disclose incriminating information so as to implicate defendant's privilege against self-incrimination and his right to counsel.